A97A1091. SHERIN et al. v. DEPARTMENT OF HUMAN RESOURCES et al.

(494 SE2d 518)

ANDREWS, Chief Judge.

This action against the Department of Human Resources (Department) and its employee, Reid,[1] a Division of Family & Children Services (DFACS) caseworker, alleging negligence, a claim under 42 USC § 1983 for violation of federal substantive and procedural due process rights, and breach of contract was initiated by Mr. and Mrs. Sherin, foster parents for Rabun County DFACS, individually and on behalf of their daughter, T. L. S., and by Mr. and Mrs. Hogan, on behalf of their daughter, L. L. H. Mrs. Hogan is the Sherins' daughter and L. L. H. is their granddaughter. Summary judgment was granted to the Department and Reid on all claims and plaintiffs appeal.

1. In reviewing grant or denial of summary judgment, this Court conducts a de novo review of the evidence. *Goring v. Martinez*, 224 Ga. App. 137, 138 (2) (479 SE2d 432) (1996); *Gaskins v. Hand*, 219 Ga. App. 823 (466 SE2d 688) (1996). The grant of summary judgment will be affirmed on appeal if it is right for any reason. *Deese v. NationsBank of Ga.*, 222 Ga. App. 275, 277 (1) (474 SE2d 18) (1996).

"To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. OCGA § 9-11-56 (c). A *defendant* may do this by showing the court that the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of plaintiff's case. If there is no evidence sufficient to create a genuine issue as to any essential element of plaintiff's claim, that claim tumbles like a house of cards. All of the other disputes of fact are rendered immaterial. [Cit.] A defendant who will not bear the burden of proof at trial need not affirmatively disprove the nonmoving party's case; instead, the burden on the moving party may be discharged by pointing out by reference to the affidavits, depositions and other documents in the record that there is an absence of evidence to support the nonmoving party's case. If the moving party discharges this burden, the nonmoving party cannot rest on its pleadings, but rather must point to specific evidence giving rise to a triable issue." *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

Viewed under the standard of *Lau's Corp.*, supra, with all infer-

---

[1] Although Reid has married and changed her name to Glover, we will refer to her as Reid for purposes of this opinion.

ences in favor of the plaintiffs, opponents of summary judgment, *Eiberger v. West*, 247 Ga. 767, 769 (281 SE2d 148) (1981), the evidence was that the Sherins had been under contract with DFACS as foster parents since 1979 and, at the time of the incident involved here, were foster parents for T. L. S., who was adopted by them thereafter. B. J. J., a 13-year-old male, was placed in the Sherins' home as a foster child on July 13, 1990, due to his father's alcoholism and continuing physical abuse of him and his siblings.

The Sherins were not told at the time of the placement that on June 13, 1990, Reid had been asked by a worker at the group home where B. J. J. was then living whether there had been any previously reported incidents of sexual misbehavior by him, because he had been found "masturbating uncovered in his bedroom on several occasions in front of other boys . . . [and] did not stop when caught." At that time, Reid knew of no such prior incidents, but she did not inform the Sherins of this masturbation.

On April 12, 1991, Mrs. Sherin reported that she had allowed L. L. H., who was visiting her grandparents and was then five years old, B. J. J., T. L. S., and other children to go into a bedroom by themselves and watch a movie. When she went to check on them, she found them all in bed without clothing and B. J. J. had an erection. The children reported to her that B. J. J. had licked L. L. H.'s private parts. B. J. J.'s younger brother, who was also the Sherins' foster child, then told Mrs. Sherin that B. J. J. had tried to bother him sexually in the past, although there is no indication that any DFACS representative had previously been aware of this.

2. This case was originally filed in the Supreme Court which transferred it to this Court sua sponte, because the trial court's order "does not show that it ruled upon a constitutional question." Therefore, we do not consider enumerations 3 and 4, which allege the trial court unconstitutionally construed OCGA § 50-21-24. *Atlanta Independent School System v. City of Atlanta*, 266 Ga. 657, 658 (1) (469 SE2d 22) (1996); *Raskin v. Wallace*, 215 Ga. App. 603, 604 (1) (451 SE2d 485) (1994).[2]

3. The first two enumerations deal with the summary judgment granted to Reid on the § 1983 claims and are considered together. They are that the trial court erred in "failing to find that the Sherins had clearly established rights" which were implicated by Reid's actions and in determining the "factual question of whether BJJ's history provided Defendant Reid with notice of the danger he

---

[2] We note that the Tort Claims Act has previously withstood several constitutional challenges. *Campbell v. Dept. of Corrections*, 268 Ga. 408 (490 SE2d 99) (1997); *Donaldson v. Dept. of Transp.*, 262 Ga. 49, 52 (1), (2) (414 SE2d 638) (1992); *Burton v. Georgia*, 953 F2d 1266 (11th Cir. 1992).

presented to other children in the Sherins' home."

The court's order regarding summary judgment to Reid states that "the plaintiffs have not met their burden of proof in establishing that defendant Reid possessed any information prior to the date of the incident indicating that B. J. J. posed a threat to the plaintiffs based on a history of sexual abuse of or by B. J. J. . . . Whatever the legal validity of the plaintiffs' constitutional claims, they all require that defendant Reid have knowledge that B. J. J. posed a threat to the foster family or other foster children which the worker did not convey to the family."

(a) "Government officials performing discretionary functions are granted a qualified immunity shielding them from imposition of personal liability pursuant to 42 USC § 1983 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' *Harlow v. Fitzgerald*, 457 U. S. 800 (102 SC 2727, 73 LE2d 396) (1982); *Forney v. Purvis*, 190 Ga. App. 192, 195-196 (378 SE2d 470) (1989). Thus, the test is applied by considering the objective reasonableness of the official's actions (irrespective of his subjective beliefs) in light of legal rules which were clearly established at the time the action was taken. *Harlow*, supra, 457 U. S. at 818-819. 'The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. That is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful . . . but it is to say that in the light of pre-existing law the unlawfulness must be apparent.' (Citations and punctuation omitted.) *Anderson v. Creighton*, 483 U. S. 635, 640 (107 SC 3034, 97 LE2d 523) (1987)." *Bell v. City of Albany*, 210 Ga. App. 371, 374 (436 SE2d 87) (1993).

Therefore, in the context of Reid's action or inaction, the issue becomes, even if the Sherins' constitutional rights in this situation are recognized, if a reasonable DFACS worker under the same circumstances would have acted similarly, i.e., in placing B. J. J. with the Sherins without necessarily telling them all of his history, including the masturbation, Reid is entitled to qualified immunity. Id. This question is a matter of law for the court. Id. at 376, n. 4.

"Under a two-part analysis applied by the Eleventh Circuit, a defendant public official asserting immunity must show that ' " 'he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred.' . . . Once the defendant public official satisfies [her] burden[,] . . . the burden shifts to the plaintiff to show lack of good faith on the defendant's part. The burden is met by proof demonstrating that the defendant public official's actions "violated clearly established constitutional laws." [Cit.]' *Stough v. Gallagher*, 967 F2d 1523, 1526 (11th Cir. 1992)." *Maxwell v. Mayor*

*&c. of the City of Savannah*, 226 Ga. App. 705, 707-708 (1) (487 SE2d 478) (1997). This burden requires that the plaintiff demonstrate that the official's actions are so obviously wrong in light of pre-existing law that "only a plainly incompetent officer or one who was knowingly violating the law would have done such a thing. . . ." Id. at 707. *Thomas v. Holt*, 221 Ga. App. 345, 348 (1) (471 SE2d 300) (1996). *Maxwell*, supra.

(b) Reid and the Department presented the affidavits of Reid; Gragg, the caseworker supervisor for Rabun County DFACS; Manus, the Director of Rabun County DFACS; and Day, the foster care specialist in the Department's Division of Family & Children Services in support of the motion for summary judgment. All of these affidavits stated that the decision to place a child in any given foster home and the amount and type of information to give the foster parents is a matter of professional discretion, left to each caseworker and her supervisor. Although the Foster Care Manual relied upon by plaintiffs states that the foster family will be given "pertinent information," what is pertinent information appropriate to share with the foster parent is also left to the caseworker's discretion. Day, who was responsible for program and policy development and writing for the Department, stated that the Foster Care Manual did not require the caseworker to tell the foster parent about any particular problems the child might have had, that this also was left to the caseworker's discretion.

In response, the plaintiffs presented Mr. Sherin's affidavit stating that he asked Reid if B. J. J. had been on drugs, had a criminal record, or had ever been sexually abused. No evidence has been presented by plaintiffs to indicate that any of these inquiries were not truthfully answered, since the only known sexual incident contained in the file is the masturbation.

Plaintiffs also submitted the affidavit of Dr. Unger, a psychologist and independent child welfare specialist. Unger's affidavit states his educational and professional experience, including working for the Michigan Department of Social Service; his familiarity with "generally accepted practice standards governing the appropriate placement and supervision of children in out-of-home care . . . ;" and his opinion that there had been inadequate identification and assessment of B. J. J.'s family and behavioral history and that the social workers should have known that masturbation in public indicates a very real "possibility the child had been a victim or perpetrator of physical, sexual, or emotional abuse" and that inappropriate sexual behavior "indicates a very real possibility that the child exhibiting such behavior has been molested and, as a direct result, is a danger to molest other children in the future."

These opinions, according to the affidavit, were given based on Unger's review of "all relevant materials provided to [him]." These materials, however, are neither attached to the affidavit nor otherwise identified in the record before us, as required. *Lance v. Elliott*, 202 Ga. App. 164, 167 (413 SE2d 486) (1991); *Val Preda Motors v. Nat. Uniform Svc.*, 195 Ga. App. 443, 444 (2) (393 SE2d 728) (1990). Additionally, his opinions regarding the significance of the masturbation incident merely raise a "possibility" and are not sufficient alone to defeat summary judgment. See *Niles v. Bd. of Regents &c. of Ga.*, 222 Ga. App. 59, 61 (2) (473 SE2d 173) (1996). Absent these conclusory statements, there is nothing in the record to support the plaintiffs' contention that information concerning B. J. J.'s past was improperly withheld from them. *Brown v. Apollo Indus.*, 199 Ga. App. 260, 262 (2) (404 SE2d 447) (1991).

In this factual setting, it cannot be said that Reid's failure to tell the Sherins about the masturbation was objectively unreasonable so as to deprive her of qualified immunity.

DFACS was not aware of any prior sexual molestation of or by B. J. J. and there has been no showing of the "deliberate indifference" by DFACS of such a possibility that is required to sustain a § 1983 claim. *Taylor v. Ledbetter*, 818 F2d 791, 794 (2) (11th Cir. 1987) (en banc), cert. denied, 489 U. S. 1065. Summary judgment to Reid was appropriate.

4. Enumerations 5, 6 and 7 deal with the court's determinations concerning exclusions under the Georgia Tort Claims Act and are considered together.[3]

Despite plaintiffs' contention to the contrary, sovereign immunity is not an affirmative defense and the party seeking to benefit from the waiver of sovereign immunity bears the burden of proof. See, e.g., *Bd. of Regents &c. of Ga. v. Daniels*, 264 Ga. 328 (446 SE2d 735) (1994); *Dept. of Human Resources v. Poss*, 263 Ga. 347, 348 (1) (434 SE2d 488) (1993); *Koehler v. City of Atlanta*, 221 Ga. App. 534, 535 (472 SE2d 91) (1996).

We conclude, as did the trial court, that plaintiffs' claims are precluded by *Dept. of Human Resources v. Hutchinson*, 217 Ga. App. 70 (1) (456 SE2d 642) (1995), because they arise from an assault and battery by B. J. J. against L. L. H. and immunity for this act has not been waived. OCGA § 50-21-24 (7); see also *Miller v. Dept. of Public Safety*, 221 Ga. App. 280, 281 (470 SE2d 773) (1996); *Mattox v. Bailey*, 221 Ga. App. 546 (1) (472 SE2d 130) (1996); *Christensen v. State*, 219 Ga. App. 10, 12 (6) (464 SE2d 14) (1995).

---

[3] A portion of the argument made here was not made below and we decline to consider it here for the first time. *Cornelius v. Wood*, 223 Ga. App. 339, 340 (1) (477 SE2d 595) (1996).

This conclusion makes it unnecessary for us to consider the issue of immunity for discretionary functions under OCGA § 50-21-24 (2). *Hutchinson*, supra at 73 (2).

5. Enumerations 8 and 9 are that the court erred in sua sponte granting judgment on the Sherins' claim of breach of contract and in finding no issue of fact on that claim.

(a) Here, the complaint was amended to add the breach of contract claim after the court's grant of the motion for summary judgment on the other claims. The court advised both parties it would consider the breach of contract claim and allowed both sides to fully brief that issue.

A trial court may grant, sua sponte, summary judgment under these circumstances. *McClendon v. 1152 Spring Street Assoc. &c.*, 225 Ga. App. 333, 334 (484 SE2d 40) (1997); *Hodge v. SADA Enterprises*, 217 Ga. App. 688, 690 (1) (458 SE2d 876) (1995).

(b) The written contract was entered into between the Sherins and Rabun County DFACS on November 1, 1979. The Sherins contend that DFACS failed to provide adequate information on B. J. J. pursuant to the contract. The contract, however, provides in pertinent part that DFACS agreed "[t]o place said children only with mutual agreement of Foster Parents and County Department."

As concluded by the trial court in his well-reasoned order, there is no ambiguity in the contract language and there is no question that there was mutual agreement to place B. J. J. in the Sherins' home. OCGA § 13-2-1. The Sherins contend that the Foster Care Manual also created a contractual duty to reveal information. It, however, was not incorporated into the agreement signed and is not a factor in interpreting the unambiguous language of the written contract. OCGA § 13-2-2 (1); *Garcia v. Unique Realty &c. Co.*, 205 Ga. App. 876, 878 (3) (424 SE2d 14) (1992).

6. Finally, plaintiffs contend that the trial court erred in not ordering production of B. J. J.'s complete DFACS record to them.

The Department objected to producing this file on the grounds of privilege, citing a number of Georgia and federal statutes dealing with confidentiality of psychologist/social worker and patient privilege records, alcoholism treatment records, and similar privileges. For the majority of the records, the Department relied on OCGA § 49-5-40 (b), which states that "each and every record concerning reports of child abuse . . . which is in the custody of the department . . . is declared to be confidential, and access thereto is prohibited except as provided in Code Section 49-5-41. . . ."

Pursuant to OCGA § 49-5-41, the court twice conducted in cam-

era reviews of the file[4] and produced, in addition to the portions previously produced by the Department, two letters dealing with alleged sexual misconduct and abuse dated after the events at issue here and previously unknown to Reid and Reid's note regarding the masturbation incident.

The voluminous file reviewed by the trial court is not contained in the record here, nor was it required to be. *Plante v. State*, 203 Ga. App. 33, 35 (2) (416 SE2d 316) (1992).

There has been no showing of abuse of discretion by the trial court and we find no error. *Pope v. State*, 197 Ga. App. 832, 833 (3) (399 SE2d 552) (1990); *Horne v. State*, 192 Ga. App. 528, 531 (4) (385 SE2d 704) (1989); *Davidson v. State*, 183 Ga. App. 557, 559 (4) (b) (359 SE2d 372) (1987).

*Judgment affirmed. Ruffin, J., and Senior Appellate Judge Harold R. Banke concur.*

DECIDED NOVEMBER 4, 1997 —
RECONSIDERATION DENIED DECEMBER 3, 1997 — ▮▮▮▮▮▮

*Cathey & Strain, Dennis T. Cathey, James E. Staples, Jr., John M. Brown*, for appellants.

*Thurbert E. Baker, Attorney General, George P. Shingler, Deputy Attorney General, Carol A. Cosgrove, Senior Assistant Attorney General*, for appellees.

---

[4] Approximately 400 additional pages of the file were produced after the initial production.