## A00A1491. DEPARTMENT OF HUMAN RESOURCES v. COLEY et al.
### (544 SE2d 165)

RUFFIN, Judge.

While a patient at Central State Hospital, an institution operated by the Georgia Department of Human Resources (DHR), Ronnie Dudley was allegedly strangled to death by another patient, Richard Hailey. Dudley's sister, Patricia Coley, individually and as executrix of her brother's estate, sued DHR, claiming that it violated a duty to protect Dudley from harm. In particular, Coley alleged that DHR negligently placed Dudley in a room with Hailey, who had made threats to kill someone in order to be transferred to a different building for the criminally insane. DHR filed a motion to dismiss, arguing that Coley's claims were barred by sovereign immunity. Specifically, DHR asserted that such claims were barred by OCGA § 50-21-24 (7), which provides that "[t]he state shall have no liability for losses resulting from . . . [a]ssault, battery," or certain other enumerated torts. The trial court denied the motion to dismiss. We granted DHR's application for interlocutory appeal, and reverse the trial court's ruling.

1. The starting point for any consideration of sovereign immunity is, of course, the Georgia Constitution. Art. I, Sec. II, Par. IX (e) of the Constitution states that

> [e]xcept as specifically provided in this Paragraph, sovereign immunity extends to the state and all of its departments and agencies. The sovereign immunity of the state and its departments and agencies can only be waived by an Act of the General Assembly which specifically provides that sovereign immunity is thereby waived and the extent of such waiver.

Thus, as a matter of constitutional law, with respect to tort claims, the state and its departments and agencies are entitled to sovereign immunity unless such immunity is *specifically* waived by a statute setting forth the extent of the waiver.

The state's waiver of sovereign immunity for tort claims is set forth in the Georgia Tort Claims Act (GTCA), OCGA § 50-21-20 et seq., which states that it "constitutes the exclusive remedy for any tort committed by a state officer or employee."[1] OCGA § 50-21-23 (a) provides that

> [t]he state waives its sovereign immunity for the torts of

---

[1] OCGA § 50-21-25 (a).

state officers and employees while acting within the scope of their official duties or employment and shall be liable for such torts in the same manner as a private individual or entity would be liable under like circumstances; provided, however, that the state's sovereign immunity is waived *subject to all exceptions and limitations* set forth in this article.[2]

Many of these "exceptions and limitations" are set forth in OCGA § 50-21-24, which lists numerous circumstances in which the state does not waive sovereign immunity. The exception relevant in this case is contained in subsection (7), which provides that "[t]he state shall have no liability for losses resulting from . . . [a]ssault, battery," or other enumerated torts. Thus, where a loss results from assault or battery, there is no waiver of sovereign immunity, even though "a private individual or entity would be liable under like circumstances."

We have uniformly held that OCGA § 50-21-24 (7) applies not merely when a state officer or employee commits one of the enumerated torts, but whenever the underlying loss results from such tort. In *Dept. of Human Resources v. Hutchinson*,[3] we noted that

"[l]oss" is extensively defined in OCGA § 50-21-22 (3) and includes "any . . . element of actual damages recoverable in actions for negligence." The focus of the exceptions to liability in OCGA § 50-21-24 (7) is not on the government action taken, but upon the act that produces the loss.

We noted that other subsections of OCGA § 50-21-24 specifically limited their application to acts taken by "a state officer or employee," while subsection (7) contained no such limitation.[4] Thus, we held that "the exception to the waiver of immunity covers any and all losses resulting from the torts enumerated in OCGA § 50-21-24 (7), regardless of who committed them."[5] Applying this rule to the facts in that case, we held that the state was entitled to sovereign immunity where a juvenile delinquent, who had been committed to the custody of the DHR, shot the operator of a contract home where the Department had placed him.

The holding in *Hutchinson* was subsequently reaffirmed in *Ga.*

---

[2] (Emphasis supplied.)

[3] 217 Ga. App. 70, 71-72 (1) (456 SE2d 642) (1995).

[4] Id. at 72. See OCGA § 50-21-24 (1) (loss resulting from "act or omission by a state officer or employee exercising due care in the execution of a statute, regulation, rule, or ordinance"), (2) (loss resulting from performance of discretionary duty "on the part of a state officer or employee").

[5] *Hutchinson*, supra at 71.

*Military College v. Santamorena.*[6] In that case, a student at Georgia Military College, a state institution, was raped by a fellow student on school premises. The victim's mother sued the college for negligence, alleging that it failed to take proper actions to ensure her daughter's safety. Although the plaintiff couched her action as a claim for breach of the college's independent duty to protect the victim, we relied on *Hutchinson* for the proposition that "we do not look at the duty allegedly breached by the government, but focus on the act causing the plaintiff's loss."[7] Because the victim's loss resulted from the commission of a tort enumerated in subsection (7), the state was entitled to sovereign immunity.

In determining whether the exception set forth in OCGA § 50-21-24 (7) applies, therefore, the focus is not on "the government action taken" or "the duty allegedly breached by the government," but on the act causing the underlying loss, and it is not necessary that such act have been committed by a state officer or employee. In this case, it is apparent that the act allegedly causing the underlying loss — i.e., the strangulation of Dudley — constitutes an assault or battery within the meaning of the exception.[8] Accordingly, the exception to the waiver of sovereign immunity applies, and the trial court erred in denying DHR's motion to dismiss.[9]

2. In his dissent, Presiding Judge Pope argues that *Hutchinson* and *Santamorena* were wrongly decided and should be overruled. In

---

[6] 237 Ga. App. 58 (514 SE2d 82) (1999).

[7] Id. at 61 (1) (a).

[8] See *Hendricks v. Southern Bell Tel. &c. Co.*, 193 Ga. App. 264-265 (1) (387 SE2d 593) (1989) ("Clearly, the act of intentionally causing actual physical harm to another is civilly actionable as a battery," although intent to harm is not an essential element).

[9] Coley's contention that the "public duty doctrine," enunciated by the Supreme Court in *City of Rome v. Jordan*, 263 Ga. 26 (426 SE2d 861) (1993), creates an exception to the state's sovereign immunity in this case is without merit. The public duty doctrine does not act as a judicially created exception to the state's sovereign immunity. Indeed, because sovereign immunity has constitutional status, it cannot be abrogated by the judiciary. *State Bd. of Ed. v. Drury*, 263 Ga. 429, 430 (1) (437 SE2d 290) (1993); *Dollar v. Dalton Public Schools*, 233 Ga. App. 827 (505 SE2d 789) (1998). Rather, the public duty doctrine simply defines the scope of a governmental entity's duty to provide police protection to individual citizens, *Dept. of Transp. v. Brown*, 267 Ga. 6, 8 (3) (471 SE2d 849) (1996), and provides that liability generally can exist only where there is a "special relationship between the injured party and the alleged governmental tortfeasor." *City of Rome*, supra at 28 (1). Thus, the doctrine serves to *restrict* the liability of governmental entities in those situations where sovereign immunity has otherwise been waived or is inapplicable (e.g., where a municipality has purchased liability insurance) — it does not act as an *exception* to sovereign immunity where such immunity has not been waived. See id. ("the abrogation or waiver of sovereign immunity in Georgia did not create a duty on the part of a municipality where none existed before"). In any event, the Supreme Court has held that the public duty doctrine is limited to "the provision of police services," *Brown*, supra at 8-9, and "does not apply outside the police protection context." *Hamilton v. Cannon*, 267 Ga. 655, 656 (1) (482 SE2d 370) (1997). This case does not involve the provision of police services. See *Santamorena*, supra at 61 (1).

essence, the dissent[10] asserts that (1) the assault and battery exception applies only where the state is being sued for the specific tort of assault or battery, and not where it is being sued under a different legal theory; and (2) the exception applies only if the assault or battery is committed by a state officer or employee acting in the scope of his employment. Under the dissent's reasoning, therefore, the assault and battery exception would provide protection only in one narrow instance, i.e., when the plaintiff seeks to hold the state liable under the doctrine of respondeat superior for an assault or battery committed by one of its officers or employees in the course of his employment. If the state is sued under a different theory, based on the independent negligence of a state officer or employee, the assault and battery exception would provide no protection. For the reasons discussed below, this approach is incorrect.

The dissent's analysis is based almost entirely on analogy to the Federal Tort Claims Act (FTCA). The dissent asserts that (1) the GTCA was "in most respects" patterned after the FTCA; (2) the FTCA has an assault and battery exception, which has been interpreted by the United States Supreme Court as applying only when the assault or battery is committed by a federal employee acting within the scope of his official duties; (3) the Georgia legislature was aware of this interpretation of the FTCA at the time it adopted the GTCA; and (4) therefore, the Georgia legislature must "necessarily" have intended for the GTCA's assault and battery exception to be interpreted in the same manner.

This analysis is fundamentally flawed because its underlying premise — that the GTCA is simply a "clone" of the FTCA — is incorrect.[11] As we noted in *Santamorena*, the federal assault and battery exception is quite different from the Georgia exception. The federal statute states that "[t]he provisions of this chapter [waiving sovereign immunity] shall not apply to . . . [a]ny claim arising out of assault [or] battery."[12] The Georgia statute, by contrast, provides that "[t]he state shall have no liability for losses resulting from . . . [a]ssault [or] battery."[13] The differences between the two statutes are thus clear: (1) the federal statute focuses on the *claim* being asserted

---

[10] Any reference to "the dissent" in this Division refers to Presiding Judge Pope's dissent. Any reference to "the dissent" in Division 3 refers to Judge Mikell's dissent.

[11] The dissent quotes from a sentence in a law review article stating that the GTCA was "[i]n most respects . . . patterned after the FTCA." Maleski, The 1992 Georgia Tort Claims Act, 9 Ga. St. U. L. Rev. 431, 448 (1993). The next sentence, however, states that "there are some significant differences between the federal statute and the Georgia statute with regard to intentional torts." Id. The article does not address the particular difference in language at issue in this case, but does apparently recognize that "in most respects" is not the same as "in all respects."

[12] 28 USC § 2680 (h).

[13] OCGA § 50-21-24 (7).

by the plaintiff, while the Georgia statute focuses on the *loss* suffered by the plaintiff; and (2) the federal statute limits the extent of the waiver of sovereign immunity, while the Georgia statute affirmatively provides that the state "shall have no liability" for losses resulting from certain acts.

Notwithstanding these differences, the dissent argues that Georgia's assault and battery exception should be given precisely the same interpretation as the federal exception, under the theory that the legislature was aware of the federal statute and case law interpreting it when it adopted the GTCA. We believe, however, that the approach should be exactly the opposite: If the legislature "mostly" patterned the Georgia statute after the federal statute, any decision to *depart* from the federal language must have been made for a reason. The question thus becomes, "Why did the legislature elect to make the state statute *different* from the federal statute?" The answer cannot be, as the dissent would suggest, "Because it wanted the meaning to be identical."

It is thus necessary to look at the Georgia language on its own terms, and not simply to defer to federal cases construing a substantially different statute. As discussed above, the Georgia statute provides that the state "shall have no liability for losses resulting from . . . [a]ssault [or] battery." Thus, if a "loss" "results from" an assault or battery, the state "shall have no liability." The term "loss" is specifically defined in the statute to mean

> personal injury; disease; death; damage to tangible property, including lost wages and economic loss to the person who suffered the injury, disease, or death; pain and suffering; mental anguish; and any other element of actual damages recoverable in actions for negligence.[14]

The dissent argues that, although OCGA § 50-21-24 (7) prevents the state from being sued for the specific torts of assault and battery, the state may nevertheless be liable if the negligence of its officers or employees constitutes a joint proximate cause of the plaintiff's injury. Thus, for example, under the dissent's reasoning, the state may be sued for negligently hiring or supervising an employee who commits a battery.[15] This analysis is flawed in that it fails to give meaning to

---

[14] OCGA § 50-21-22 (3).

[15] In a footnote, the dissent claims that its analysis does not necessarily lead to this conclusion — i.e., it does "not foreclose the conclusion" that the state would be immune from liability for its independent negligence (such as negligent hiring, supervision, or training), so long as the actual assault or battery is committed by a state officer or employee and not by a third party. This claim is disingenuous, and would render the dissent's entire analysis internally inconsistent. The whole basis for the dissent's argument that the difference in lan-

the statutory language. It is true that there may be more than one proximate cause of a plaintiff's loss. Regardless of the number of proximate causes, however, the plaintiff sustains only one "loss." This loss cannot be apportioned among the various proximate causes, with part of the loss attributed to one event and another part attributed to a different event. To treat facts with imagination is one thing, but to imagine facts is quite another.

It cannot be disputed that, when a plaintiff is injured by an assault or battery, his loss "results" from such assault or battery, even though there may have been other contributing factors. And the statute clearly provides that the state shall have no liability for the "loss." Under the dissent's reasoning, however, the state may or may not have liability for the loss, depending on the particular legal claim asserted. Because the Georgia statute, unlike the federal statute, speaks of "losses" instead of "claims," the dissent's proposed interpretation is unpersuasive.

3. In his dissent, Judge Mikell asserts that the terms "assault" and "battery," as used in OCGA § 50-21-24 (7), should be interpreted to mean "simple assault" and "simple battery." Therefore, according to the dissent, the state should not be immune from tort liability where the acts in question rise to the level of a serious crime. For the reasons discussed below, we disagree.

The dissent purports to base its interpretation upon the rule of construction known as noscitur a sociis — literally, "it is known by its associates."[16] Under this rule of construction, "the meaning of words or phrases in a statute may be ascertained from others with which they are associated and from which they cannot be separated without impairing or destroying the evident sense they were designed to convey in the connection used."[17] Unfortunately, however, while purporting to apply this rule, the dissent in fact turns it on its head, reaching a result exactly the opposite of what the rule would require.

As the dissent recognizes, OCGA § 50-21-24 (7) enumerates nine different torts, including assault, battery, false imprisonment, false

---

guage between the state and federal statutes is irrelevant — i.e., that "losses resulting from" means the same thing as "claim arising out of" — is its assertion that a "loss" may result from more than one proximate cause. Thus, according to the dissent, the assault and battery exception does not provide immunity for losses resulting from a proximate cause that combines with the assault or battery, since the loss in such case would also result from the independent tort. As discussed above, the dissent's joint proximate cause analysis is incorrect, since the plaintiff's entire loss results from an assault or battery even if there are additional proximate causes, and the state is granted immunity for the "loss," not the "claim." However, the dissent cannot hang its hat on the fact that there may be multiple proximate causes for a loss, and then ignore that fact when it is inconvenient.

[16] Black's Law Dictionary (7th ed.), p. 1084.

[17] (Punctuation omitted.) *Burke v. State*, 208 Ga. App. 446-447 (1) (430 SE2d 816) (1993).

arrest, malicious prosecution, abuse of process, libel, slander, and interference with contractual rights. Each of these is recognized as a tort under Georgia law. If a loss results from any of these torts, the state is immune from suit. Under the guise of interpreting these words similarly, however, the dissent would hold that the words "assault" and "battery" mean "simple assault" and "simple battery." But these are not torts — they are crimes! Under the dissent's reasoning, therefore, the terms "assault" and "battery" are to be singled out and treated differently from all the other terms in the statute — they are to be construed as referring to *crimes*, while the others are to be construed as referring to *torts*. This is not noscitur a sociis — it is non noscitur a sociis.

The dissent asserts that members of the legislature "would likely be surprised to learn that their list of nine torts has been expanded to include exemptions from liability for aggravated assault, child molestation, rape, and . . . murder." However, the legislature did not provide the state with immunity for violent crimes, but with immunity for torts — we are, after all, dealing with a *Tort* Claims Act. And the torts of assault and battery are broad enough to include numerous acts which, if prosecuted criminally, would be characterized as aggravated assault, child molestation, rape, and even murder.[18] Given that the legislature clearly used the terms "assault" and "battery" in their tort sense, we do not believe it would be surprised to learn that the state is immune from liability for acts that constitute those torts.

Nothing we have said goes to the wisdom of refusing to waive sovereign immunity in circumstances such as those in this case. Sovereign immunity is a harsh doctrine, not an equitable one. Indeed, it is just the opposite of equity — it is the state declaring that it cannot be sued even where it would otherwise be liable. Nevertheless, it is a constitutionally recognized doctrine, and the constitution expressly provides that immunity for tort claims can be waived only by a legislative act specifically providing for such waiver and setting forth the extent thereof.[19] The legislature recognized the harshness of the doctrine in enacting the Tort Claims Act, noting that strict application of the doctrine leads to "inherently unfair and inequitable results."[20] Nevertheless, while recognizing such inequity, the legislature deliberately chose to reserve sovereign immunity for all losses resulting from assault or battery. There is no doubt that it had the power to do so, and the language it used is not susceptible to the construction placed on it by either of the dissents. Our job is to read the statute,

---

[18] See *Hendricks*, supra.
[19] Ga. Const., Art. I, Sec. II, Par. IX (e).
[20] OCGA § 50-21-21 (a).

not to rewrite it to conform to an equitable result. The singleness and sacredness of our purpose are to ascertain errors of law. Accordingly, because the loss in this case unquestionably resulted from an assault or battery, the state has not waived sovereign immunity.

*Judgment reversed. Johnson, C. J., Andrews, P. J., Blackburn, P. J., Smith, P. J., Miller and Ellington, JJ., concur. Pope, P. J., Eldridge, Barnes, Phipps and Mikell, JJ., dissent.*

POPE, Presiding Judge, dissenting.

I agree with the majority that the public duty doctrine does not apply. However, I respectfully dissent to Division 1 for two reasons. First, in *Dept. of Human Resources v. Hutchinson*, 217 Ga. App. 70 (456 SE2d 642) (1995) and *Ga. Military College v. Santamorena*, 237 Ga. App. 58 (514 SE2d 82) (1999), upon which the majority relies in Division 1, this Court failed to recognize persuasive authority showing that the Georgia legislature intended to construe the assault and battery exception differently. And second, *Hutchinson* is based on flawed reasoning regarding joint proximate cause.

The principal issue in this case is whether by enacting the assault and battery exception, the legislature intended to keep sovereign immunity for all injuries that are at least partly caused by assault and battery, (1) even though a nonstate actor committed the assault or battery, and (2) regardless of whether a state official's own independent negligence also contributed to the loss. The answer is controlled by the Georgia legislature's intent when it enacted the Georgia Tort Claims Act in 1992 and, more specifically, their intent behind including the assault and battery exception.[21]

The GTCA was "in most respects" "patterned" after the Federal Tort Claims Act. Maleski, The 1992 Georgia Tort Claims Act, 9 Ga. St. U. L. Rev. 431, 432, 448.[22] Indeed, the FTCA contains a strikingly similar assault and battery exception to liability. See 28 USCA § 2680 (h). And, prior to when the Georgia legislature enacted the GTCA, the United States Supreme Court had already held: (1) that the assault and battery exception is inapplicable to an assault or battery committed by a federal employee acting outside of his official

---

[21] The Georgia State University Law Review "Peach Sheets" for 1992, which have some legislative history on the Georgia Tort Claims Act, do not provide any guidance on the issue. Neither do the House and Senate Journals. Nor is the stated legislative intent found in OCGA § 50-21-21 helpful on this specific point.

[22] It is true that the article states that "there are some significant differences" between the FTCA and the GTCA·with regard to intentional torts. But the article explains that the significant differences to which it refers are the inclusion in the FTCA of a waiver of immunity for acts or omissions of the state's investigative or law enforcement officers and the fact that the FTCA includes "misrepresentations" in the list of torts excluded from the waiver of immunity. Id. at 448. Neither of these differences is relevant to the issue raised in this case.

duties and analogously to someone who is not a federal employee; and (2) that therefore, the federal government can be liable for the independent negligence of an employee that contributes to the injuries caused by an assault and battery, such as in the present case. *Sheridan v. United States*, 487 U. S. 392 (108 SC 2449, 101 LE2d 352) (1988).[23]

In *Sheridan*, an obviously intoxicated off-duty serviceman was seen by three naval corpsmen carrying a rifle. The corpsmen took no action to subdue the drunken serviceman nor to alert the appropriate authorities that he was heavily intoxicated and armed. Later, the drunken serviceman shot and wounded the plaintiffs. The Court was asked to consider whether the plaintiffs' claim that the corpsmen were negligent arose out of an assault and battery within the meaning of 28 USCA § 2680 (h). Id. The Court allowed the suit against the government. It noted that the case involved two tortious acts, "one of which is an assault or battery and the other of which is a mere act of negligence," i.e., the failure of the corpsmen to take action. Id. at 398. But the Court did not simply conclude that because the tort of negligence was not covered by the exception, the plaintiffs could maintain their action. Id. at 399-400.

Rather, the Court based its conclusion that the assault and battery exception did not prevent the claim on a different theory. The Court concluded that even though the assault and battery exception can be read literally to apply to assaults committed by persons other than government employees, "the intentional tort exception is simply inapplicable to torts that fall outside the scope of" the government's general waiver of immunity. Id. at 400.

The Court explained that when the government waived immunity, it agreed to submit to claims only for the negligent or wrongful acts of government employees "acting within the scope of [their] office or employment." 28 USCA § 1346 (b) (1); *Sheridan*, 487 U. S. at 401. The assault and battery exception to this general waiver (28 USCA § 2680 (h)) thus carved out liability only for acts that would otherwise be actionable under this section, namely, those of government employees acting within the scope of their employment. Since the assaults of nonemployees, as in *Muniz*, were not within § 1346 (b)'s waiver, government negligence permitting them could not be

---

[23] Further, in *United States v. Muniz*, 374 U. S. 150 (83 SC 1850, 10 LE2d 805) (1963), the Supreme Court had already held that a prisoner could bring suit against the government for damages resulting from an assault by other prisoners that prison guards had negligently permitted to happen. Although the Court in *Muniz* did not directly answer the question of whether the assault and battery exception to the FTCA applied to the acts of nonemployees, it did so by negative implication when it noted that the exception did apply to the intentional torts of government employees. *Muniz*, 374 U. S. at 163. Then the Supreme Court in *Sheridan* directly analyzed why that exception did not affect the result in *Muniz*.

immunized by § 2680 (h). Similarly, where a claim of negligence involved an assault by a government employee acting outside the scope of his employment, as was the case in *Sheridan*, § 2680 (h) did not bar the claim if the government was otherwise negligent in permitting the assault to occur. 487 U. S. at 400-402.

Not only was *Sheridan* the controlling interpretation of the FTCA at the time that Georgia enacted the GTCA, but the same reasoning holds true under the GTCA. OCGA § 50-21-23 provides that "[t]he state waives its sovereign immunity for the torts of state officers and employees while acting within the scope of their official duties or employment." It follows that the exceptions to liability apply only to acts that would otherwise be actionable under this section, namely, those of state employees acting within the scope of their official duties or employment. Because the torts of nonstate employees are not within the waiver of immunity, there is no reason to immunize them with the assault and battery exception. See *Sheridan*.

To summarize, unless the Georgia legislature changed the wording from that found in the FTCA, it necessarily adopted the Supreme Court's authoritative interpretation of the assault and battery exception to the waiver of sovereign immunity. "The [Georgia] legislature is presumed to know the condition of the law and to enact statutes with reference to it." *State v. Tiraboschi*, 269 Ga. 812, 814 (504 SE2d 689) (1998). As discussed below, the only relevant difference in the wording of the GTCA does not change this result.

Despite *Sheridan*, in *Hutchinson* and *Santamorena* this Court construed the assault and battery exception of the GTCA to mean the opposite of the construction found in *Sheridan*, namely: (1) that sovereign immunity applies even though the person committing the assault and battery was not a state employee, and (2) the state is not liable for independent negligence of a state employee that contributes to the victim's injuries where those injuries were also caused by assault and battery.

With regard to the first point, *Hutchinson* held that because several of the other exceptions to the waiver of immunity itemized in OCGA § 50-21-24 specifically state that they apply to state officials, but the assault and battery exception does not, the legislature must have meant that the state has immunity regardless of who commits the assault and battery. *Hutchinson*, 217 Ga. App. at 71. But, the FTCA has the exact same possible ambiguity. See 28 USCA § 2680. And, despite that language, the United States Supreme Court in *Sheridan* held that the assault and battery exception does not apply to federal employees acting outside of their official duties, and analogously to nonemployees. Again, the Supreme Court's construction of the FTCA was the definitive construction when the Georgia legisla-

ture cloned it to make the GTCA. Therefore it can be presumed that the Georgia legislature intended the same construction of the statute found in *Sheridan*. Yet *Hutchinson* ignored the decision in *Sheridan*.

With regard to the second point, *Santamorena* held that a difference in the wording of the FTCA and the GTCA shows that the state is not liable for the independent negligence of a state employee who contributes to the victim's losses where those losses were also caused by a third party's assault and battery. As stated in *Santamorena*,

> The FTCA provides that its waiver of sovereign immunity "shall not apply to . . . (a)ny claim arising out of assault (or) battery." 28 USC § 2680 (h). Thus, the FTCA focuses not on the act causing plaintiff's loss, but on the nature of plaintiff's claim. . . . In contrast, under the GTCA, we do not look at the duty allegedly breached by the government, but focus on the act causing the plaintiff's loss. See *Hutchinson*, supra. . . . Here, "(a)ny alleged losses arising from (the State's alleged acts and omissions) were caused by the intentional acts alleged(, i.e., the rape), not negligence. The State has no liability for such losses." [Cit.]

(Emphasis omitted.) *Santamorena*, 237 Ga. App. at 60-61.

But *Santamorena* relies on *Hutchinson* for the critical part of this analysis, and *Hutchinson*'s reasoning is flawed.[24] In *Hutchinson*, a juvenile who had been declared delinquent shot his foster parent after being placed in her home by the DHR. The parent sued DHR alleging that it was negligent in placing the juvenile in her home and in failing to warn her of the juvenile's violent propensities. *Hutchinson* held:

> [T]he exception to the waiver of immunity covers any and all losses resulting from the torts enumerated in OCGA § 50-21-24 (7), regardless of who committed them. The language used does not provide any limitation on the status of the person committing an OCGA § 50-21-24 (7) tort; it provides instead that "(t)he state shall have no liability for losses resulting from" the enumerated torts. "Loss" is extensively defined in OCGA § 50-21-22 (3) and includes "any . . . element of actual damages recoverable in actions for negligence." The focus of the exceptions to liability in OCGA § 50-

---

[24] *Santamorena* quotes *Rhoden v. Dept of Public Safety*, 221 Ga. App. 844, 845 (1) (473 SE2d 537) (1996), for part of its conclusion. But *Rhoden* based its conclusion directly on *Hutchinson*. And *Rhoden* is easily distinguished. There, the tortfeasors were state employees, and therefore the assault and battery exception was directly applicable.

21-24 (7) is not on the government action taken, but upon the act that produces the loss. Here, *the government action taken, placing the juvenile in Hutchinson's home, itself produced no loss to her*; it was the juvenile's independent tort, one specified in OCGA § 50-21-24 (7), that resulted in Hutchinson's injury and damages.

(Emphasis supplied.) *Hutchinson*, 217 Ga. App. at 71-72.

The emphasized sentence contains a critical flaw in reasoning. It is well established in tort law that, "When two concurrent causes naturally operate to produce an injury, the individual tortfeasors may be sued jointly or separately, because their wrongful conduct together becomes the proximate cause of the injury." C. Adams & C. Adams, Ga. Law of Torts, § 15-5. Thus, in *Hutchinson* the "government action taken" was indeed a proximate cause of the injury under the law. It, *together with* "the juvenile's independent tort" "*resulted in* Hutchinson's injury and damages." (Emphasis supplied.) Id. at 72. The sentence as written incorrectly concludes that the government action did not result in the loss. And, the indication that the government action by "itself" produced no loss has no relevant meaning. *Hutchinson* effectively eliminated the idea of joint proximate cause from the determination of what acts can contribute to a loss. Under its reasoning, one of two joint proximate causes of a tort does not result in the victim's loss. "This contradicts the basic rule that the same injury can arise from more than one wrongful act." *Sheridan*, 487 U. S. at 405 (Kennedy, J., concurring in the judgment). This illogical result reveals the flaw in the reasoning of *Hutchinson*. That flaw in reasoning is carried forward to *Santamorena*. In that case it was said, " '(a)ny alleged losses arising from (the [s]tate's alleged acts and omissions) were caused by the intentional acts alleged . . . , not [the state's] negligence." *Santamorena*, 237 Ga. App. at 61. Again, joint proximate cause has been lost.

Nor does the different wording of the GTCA ("losses resulting from" assault and battery) rather than the FTCA ("claims arising from" assault and battery) lead to the result stated in *Hutchinson*. If one of these protects the government from its own joint proximate liability and the other one does not, it is anyone's guess which is which.

Because this Court failed to consider the relevant construction of the FTCA that existed when the GTCA was enacted, and because *Hutchinson* is flawed and leads to a result inconsistent with basic tort law, I would overrule it and the three cases that rely on it — *Santamorena*; *Christensen v. State of Ga.*, 219 Ga. App. 10 (464 SE2d 14) (1995); and *Sherin v. Dept. of Human Resources*, 229 Ga. App. 621 (494 SE2d 518) (1997). Accordingly, the correct construction of the

statute should follow *Sheridan*. Under that construction, the intentional tort exception found in OCGA § 50-21-24 (7) is simply inapplicable to torts that fall outside the scope of the state's general waiver of immunity in OCGA § 50-21-23.[25] I would affirm the trial court's decision on that basis.

I am authorized to state that Judge Eldridge, Judge Barnes and Judge Phipps join in this dissent.

MIKELL, Judge, dissenting.

I agree with the majority that the public duty doctrine does not apply. However, I respectfully dissent because the loss in this tragic case did not result from an "assault" or a "battery" as those terms are used in OCGA § 50-21-24 (7). I would disapprove *Dept. of Human Resources v. Hutchinson*,[26] *Christensen v. State of Ga.*,[27] *Sherin v. Dept. of Human Resources*,[28] and *Ga. Military College v. Santamorena*[29] to the extent that those decisions interpret assault and battery expansively. Instead, the statute should be read narrowly to limit sovereign immunity to losses arising from acts of simple assault and simple battery.

In OCGA § 50-21-24 (7), the legislature listed nine specific torts which it wished to exclude from the waiver of immunity: assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, and interference with contractual rights. Had the General Assembly intended to immunize broadly the state from liability, it would have specified "all intentional torts." Instead, it seems to have chosen certain civil wrongs which, monumental though they may seem to the victims, do not involve grievous bodily injury or bloodshed. Significantly, the legislature did not refer specifically to our tort statutes, OCGA §§ 51-1-13 and 51-1-14, which codified the common law at the time of the 1863 Code and which are broader than simple assault and simple battery.[30]

---

[25] Whether claims of negligent hiring, negligent supervision or negligent training may provide the basis for liability under the GTCA for a foreseeable assault or battery by a state employee is a separate question from the one before us today. Indeed, *Sheridan* did not foreclose the conclusion that such claims, when they involve assault and battery by a government employee, are barred by the intentional tort exception. In fact, on remand in *Sheridan*, the Fourth Circuit held that, after the plaintiffs dropped certain factual assertions, its only remaining claims were in the nature of negligent supervision. *Sheridan v. United States*, 969 F2d 72, 75 (II) (4th Cir. 1992). And, despite the Supreme Court's holding in *Sheridan*, the Fourth Circuit held that negligent supervision claims are barred by the intentional tort exception. Id.

[26] 217 Ga. App. 70 (456 SE2d 642) (1995).

[27] 219 Ga. App. 10 (464 SE2d 14) (1995).

[28] 229 Ga. App. 621 (494 SE2d 518) (1997).

[29] 237 Ga. App. 58 (514 SE2d 82) (1999).

[30] Compare OCGA §§ 51-1-13; 51-1-14 with OCGA §§ 16-5-20; 16-5-23; 16-5-23.1. See generally C. Adams & C. Adams, Ga. Law of Torts, § 2-2 (1999).

Our duty is, of course, to discern the intent of the legislature when it enacted OCGA § 50-21-24 (7) and to give the terms it used their "common and ordinary meaning."[31] The members of the General Assembly, who crafted the statute pursuant to constitutional authorization, would likely be surprised to learn that their list of nine torts has been expanded to include exemptions from liability for aggravated assault,[32] child molestation,[33] rape,[34] and, by the majority here, murder.

Past decisions of this court have imbued the words "assault and battery" in OCGA § 50-21-24 (7) with the meanings they have in the criminal law and have expanded them to include every crime of which assault and battery are lesser included offenses. Thus, in *Christensen*, the court without discussion assumed that the exemption from liability for assault included an exemption from liability for rape, and here the majority expands the definition of assault and battery to include murder. As interpreted by this court, OCGA § 50-21-24 (7) now immunizes the state from liability for losses resulting from "[all violent crimes], false imprisonment, false arrest. . . ."

This court's previous interpretations of the statute may be technically correct, but the statutory language does not demand so harsh a result. We could just as legitimately apply the principle of noscitur a sociis to interpret "assault and battery" narrowly.[35] As explained by the late Supreme Court of Georgia Justice Charles Weltner, "Words, like people, are judged by the company they keep."[36] The doctrine of noscitur a sociis often restricts general words to less general meanings by analogy to neighboring words.[37] Applied to the statute at issue, the doctrine requires us to note that the words "assault and battery" immediately precede words which name specific, discrete torts, such as abuse of process, libel, and slander. Thus, the General Assembly likely meant "assault and battery" to connote specific torts — simple assault and simple battery — rather than to include every conceivable violent crime.[38]

If we continue to broaden our interpretation of OCGA § 50-21-24 (7), we will ultimately ravage the waiver of sovereign immunity. Will

---

[31] See, e.g., *Ray M. Wright, Inc. v. Jones*, 239 Ga. App. 521, 523 (521 SE2d 456) (1999).

[32] *Hutchinson*, supra.

[33] *Sherin*, supra.

[34] *Christensen*, supra; *Santamorena*, supra.

[35] See *Mott v. Central R.*, 70 Ga. 680 (1883); see generally Sutherland Statutory Construction, § 47.16, pp. 271-272 (6th ed. 2000).

[36] *Anderson v. Southeastern Fidelity Ins. Co.*, 251 Ga. 556 (307 SE2d 499) (1983), citing 73 AmJur2d 406, Statutes, § 213.

[37] *Dunham v. State*, 140 Fla. 754 (192 S. 324-326) (1939).

[38] See *Undercofler v. VFW Post 4625*, 110 Ga. App. 711 (139 SE2d 776) (1964) ("general expressions may sometimes be restrained so as to make the statute bear reasonable construction.").

we one day uphold the dismissal of a lawsuit arising from a kidnapping with bodily injury on the ground that kidnapping is just a form of false imprisonment and hence expressly exempted from the waiver? I do not believe that the General Assembly intended the state's immunity to stretch so far.

We may have narrowed the waiver of sovereign immunity by inadvertence. For example, in *Hutchinson*, a lawsuit arising from an *aggravated* assault, the parties inexplicably did not dispute that the shooting was a "tortious battery, or assault and battery."[39] The decision neither discussed the scope of the exemption nor expressly ruled upon it.[40] Instead, the decision turned on whether the state was liable if the tort was committed by a third person.

The next case, *Christensen*, cites *Hutchinson* as it concludes, without discussion or an express holding, that assault and battery encompass rape, for which the state enjoyed immunity. *Sherin* subsequently reached the same conclusion about the molestation of a young child by an older one. In addition to *Christensen* and *Hutchinson*, *Sherin* relied on two decisions where the gravamen of the complaint was *simple* battery and the exception truly applied.[41] *Santamorena*, our most recent decision, also involved rape and simply relied on *Hutchinson*, *Christensen*, and *Sherin* to conclude that the suit was barred by sovereign immunity.

Thus, in whole or in part, the decisions which I would reconsider all depend on *Hutchinson*, a case in which the parties did not dispute, and presumably did not argue, whether the words "assault and battery" should be read narrowly or expansively. We should apply well-established rules of statutory construction to define "assault" and "battery" as simple assault and simple battery. I believe that we deviated from the legislative intent when we expanded those words to encompass every violent crime of which assault or battery is a lesser included offense.

A restrained interpretation of OCGA § 50-21-24 (7) would not expose the state to greatly increased liability. The assault and battery exemption would still, as intended by the General Assembly, ban many lawsuits less compelling than the one we review today.[42]

---

[39] Id. at 71.

[40] As authority the court in *Hutchinson* cited the tort statute and *Hendricks v. Southern Bell Tel. &c. Co.*, 193 Ga. App. 264 (387 SE2d 593) (1989), which held that a battery could be committed without an intent to injure.

[41] *Sherin*, supra, citing *Mattox v. Bailey*, 221 Ga. App. 546 (472 SE2d 130) (1996); *Miller v. Dept. of Public Safety*, 221 Ga. App. 280 (470 SE2d 773) (1996).

[42] See, e.g., *Rhoden v. Dept. of Public Safety*, 221 Ga. App. 844 (473 SE2d 537) (1996) (rowdy fans at Falcons game arrested after throwing paper airplanes and cups of beer onto field); *Miller*, supra (excessive force by arresting officer "amounting to an . . . assault and battery"); *Mattox*, supra (corrections officer "slammed" plaintiff's head into a door and thereafter beat him).

And the state would still have immunity from many suits involving grievous injuries or wrongful death because of the discretionary act exemption, for example.[43] Moreover, in this case, other defenses can be considered at a later time. But this case is before us now on appeal from the trial court's denial of a motion to dismiss for failure to state a claim upon which relief can be granted. I would affirm the decision of the trial court.

DECIDED DECEMBER 1, 2000 —
RECONSIDERATION DISMISSED DECEMBER 15, 2000 —

*Thurbert E. Baker, Attorney General, John C. Jones, Senior Assistant Attorney General, Gray, Hedrick & Edenfield, Bruce M. Edenfield, Robert L. Bunner*, for appellant.
*Lawson & Sippel, John A. Lawson, Cole & Cox, Charles E. Cox, Jr., Jason K. Priebe*, for appellees.

