A03A1041. HOPKINSON v. LABOVITZ et al.
(589 SE2d 255)

BARNES, Judge.

Helen Hopkinson appeals the trial court's grant of summary judgment to her former divorce attorney and law firm on her claim of fraud against them. For the reasons that follow, we affirm.

In October 1996, acting pro se, Hopkinson sued Steven Labovitz and Ellis, Funk, Labovitz, Goldberg & Dockson, P.C., initially alleging that the attorney committed malpractice by failing to reveal her husband's true income. She contended that, because she believed her husband's income would be $159,000 instead of $350,000, she settled for much less alimony and child support than she would have otherwise. Hopkinson did not attach an expert affidavit to her complaint, but because she filed within ten days of the day the statute would run, she had an additional forty-five days to obtain an affidavit pursuant to OCGA § 9-11-9.1 (b). Labovitz answered and counterclaimed for unpaid attorney fees of almost $20,000. Before the 45-day time limit ran, Hopkinson requested a six-month extension of time to file an expert affidavit, which the trial court denied.

Hopkinson then amended her complaint to allege that Labovitz's failure to apprise her of her husband's true income constituted fraud and misrepresentation. The trial court subsequently granted Labovitz's motion to dismiss the entire complaint for failure to attach an expert affidavit. Hopkinson appealed, and this court affirmed the trial court in part and reversed in part. *Hopkinson v. Labovitz,* 231 Ga. App. 557 (499 SE2d 338) (1998) (physical precedent only). We held that, while the professional malpractice portion of Hopkinson's claim was properly dismissed for failure to file an expert affidavit, her fraud claim survived. The Supreme Court agreed with that analysis in *Labovitz v. Hopkinson,* 271 Ga. 330 (519 SE2d 672) (1999), and the case returned to the trial court.

Labovitz then moved for summary judgment, arguing that his

affidavit established that he did not falsely represent the income of Hopkinson's ex-husband, and that Hopkinson failed to present evidence establishing scienter. Hopkinson opposed the motion because the parties had conducted no discovery; Labovitz subsequently withdrew the motion and the parties consented to conduct six months of discovery. After the discovery period expired, Labovitz renewed his motion for summary judgment, arguing that Hopkinson failed to establish the existence of a false representation or detrimental reliance. The trial court denied the motion, holding simply that material issues of fact precluded summary judgment.

Labovitz then filed another motion for summary judgment on the issue of damages, and the trial court granted the motion. The court held that Hopkinson failed to present sufficient evidence that she suffered damages that were proximately caused by fraud, and also held that any losses she might have suffered due to alleged misrepresentation were mitigated by the increased alimony a jury granted her in her subsequent modification action against her ex-husband.

Hopkinson argues on appeal that the trial court erred in (1) granting summary judgment to the defendants; (2) ruling that her damages were too speculative; and (3) finding that the jury's modification award mitigated her claim against Labovitz.

1. When ruling on a motion for summary judgment, a court must give the opposing party the benefit of all reasonable doubt, and the evidence and all inferences and conclusions therefrom must be construed most favorably toward the party opposing the motion. *Moore v. Goldome Credit Corp.*, 187 Ga. App. 594, 596 (370 SE2d 843) (1988). On motions for summary judgment, however, courts cannot resolve the facts or reconcile the issues. *Fletcher v. Amax, Inc.*, 160 Ga. App. 692, 695 (288 SE2d 49) (1981). When reviewing the grant or denial of a motion for summary judgment, this court conducts a de novo review of the law and the evidence. *Desai v. Silver Dollar City*, 229 Ga. App. 160, 163 (1) (493 SE2d 540) (1997).

(a) Hopkinson first contends that the Supreme Court's opinion in *Labovitz v. Hopkinson*, supra, 271 Ga. at 332, established the viability of her fraud claim, and that opinion, along with the trial court's order denying Labovitz's first motion for summary judgment, constitute the "law of the case" and are res judicata according to OCGA § 9-12-40. These contentions are incorrect.

First, OCGA § 9-12-40 provides, "A judgment of a court of competent jurisdiction shall be conclusive between the same parties and their privies as to all matters put in issue or which under the rules of law might have been put in issue in the cause wherein the judgment was rendered." Neither the first denial of summary judgment nor the

Supreme Court's opinion constitutes a judgment in this case, and this Code section is not applicable.

Second, the Supreme Court's earlier ruling that Hopkinson's fraud claim is viable did not address the issue in the context of a summary judgment motion. In considering the grant of a motion to dismiss, the Court held only that the fraud claim survived the motion because it was distinct from the malpractice claim. *Labovitz v. Hopkinson*, supra, 271 Ga. at 336-337. Dismissal of the malpractice claim for failure to file an expert affidavit did not preclude Hopkinson from pursuing her fraud claim. The Court addressed no evidentiary issues, and therefore the only "law of the case" resulting from that opinion was that Hopkinson's fraud claim survived the motion to dismiss for lack of an expert affidavit.

Finally, the second motion for summary judgment raised issues that were not considered in the first motion for summary judgment, specifically the issue of damages.

> The "law of the case" has been defined as a controlling legal rule established by a previous decision between the same parties in the same case. However, the principle only establishes the law of the case in its then existing evidentiary posture. When a case is brought to this court, all questions as to pleadings and the effect of evidence adjudicated by this court are binding as the law of the case on this court and in the court below, unless additional pleadings and evidence prevail to change such adjudications. In the absence of statute the phrase, "law of the case," as applied to the effect of previous orders on the later action of the court rendering them in the same case, merely expresses the practice of courts generally to refuse to reopen what has been decided. Thus, if subsequent to an appellate decision, the evidentiary posture of the case changes in the trial court, the law of the case rule does not limit or negate the effect that such change would otherwise mandate. Where the second motion for summary judgment is based on matters not involved in the decision on the first motion, "the law of the case" is not involved.

(Citations, punctuation and emphasis omitted.) *Modern Roofing & Metal Works v. Owen*, 174 Ga. App. 875-876 (1) (332 SE2d 14) (1985). Therefore, the trial court properly considered Labovitz's second motion for summary judgment even though it had already denied his first motion. *Parks v. State Farm Gen. Ins. Co.*, 238 Ga. App. 814, 815-816 (1) (520 SE2d 494) (1999).

(b) Hopkinson asserts that the trial court's finding that she presented no evidence of damages ignores the expert affidavit she submitted on that issue, and constitutes an abuse of discretion. "Abuse of discretion" is not the standard by which we review a trial court's ruling on a motion for summary judgment; rather, we review the law and evidence de novo. *Desai v. Silver Dollar City*, supra, 229 Ga. App. at 163.

"The tort of fraud has five elements: a false representation by a defendant, scienter, intention to induce the plaintiff to act or refrain from acting, justifiable reliance by plaintiff, and damage to plaintiff." (Citation and punctuation omitted.) *Stiefel v. Shick*, 260 Ga. 638, 639 (1) (398 SE2d 194) (1990). "To establish a cause of action for fraud, a plaintiff must show that actual damages, not simply nominal damages, flowed from the fraud alleged." (Citations omitted.) *Glynn County Fed. Employees Credit Union v. Peagler*, 256 Ga. 342, 344 (2) (348 SE2d 628) (1986).

In this case, Hopkinson contended that she was damaged by Labovitz's alleged fraudulent failure to disclose her husband's projected yearly income, because if she had known his true income, she would not have settled for the amount of alimony she did, which was $5,000 a month for two years, then $4,000 a month for eight more years. Instead, she would have held out for more money or would have taken the issue to a jury. She presented affidavits to that effect, and testified at her deposition that she would not have settled had she known her ex-husband's true income. Hopkinson also introduced the affidavit of an attorney who opined that, based on the ex-husband's income of $350,000, it was his expert opinion, to a reasonable degree of professional certainty, that Hopkinson should have received at least $4,000 per month child support and at least $8,000 per month alimony.

The associate who worked on Hopkinson's divorce under Labovitz stated in an affidavit that he told Hopkinson that he had calculated that her ex-husband's income the year the divorce was settled would be $343,000, and conveyed that information to Hopkinson, as supported by the billing record. He said that, based on his 14 years experience in family law, the settlement she received was consistent with her ex-husband having an income of $352,000, not $159,000. Labovitz introduced into evidence Hopkinson's deposition, in which she agreed that she thought her ex-husband had been making $7,900 a month and paying her $6,000 in child support and alimony, as well as paying for the children's education. The ex-husband's divorce attorney testified by affidavit that his client "would not have voluntarily agreed to settle the divorce case based upon any increased alimony or property concessions or obligations above or beyond those reflected in the Agreement." Finally, Labovitz

testified in his deposition that he negotiated the alimony amount "in the context of an entire settlement," based on what he thought the ex-husband could afford, what he thought Hopkinson needed, and "in light of the rest of the things that he was providing for Mrs. Hopkinson. I mean, for instance, I think he was paying for her to go to school for a period of time and that was going to be — that was non-alimony. He was paying for medical insurance for a long period of time. . . ."

The record includes a copy of Hopkinson's divorce agreement. She and her husband had four children, two of whom were minors at the time of the divorce. Their 17-year-old elected to live with her father, and Hopkinson was not responsible to him for child support for this child. The agreement provided that the ex-husband would pay to Hopkinson $1,000 a month child support for the other minor child, who was 12, plus all costs of the private boarding school the child attended, or $1,500 a month support if the child was not enrolled in the private school; all costs of the children's college education for five years, in an amount equivalent to University of Georgia fees; the children's medical and dental insurance throughout college as well as any noncovered medical and dental expenses; alimony to Hopkinson of $5,000 a month for two years, then $4,000 a month for eight more years; all expenses of a four-year college degree for Hopkinson, not to exceed $44,800; medical and dental insurance for Hopkinson for ten years; life insurance naming Hopkinson as beneficiary equal to the alimony and child support obligations; $50,000 equity from the marital home; $500 moving expenses; all household furnishings; approximately $75,000, representing 75 percent of the ex-husband's IRAs, pensions, and 401(k)s; $24,000 to Hopkinson for attorney fees; and $8,500 attorney fees to her lawyers.

While Hopkinson introduced testimony that she would not have made the agreement she made if she had known her ex-husband's true income, Labovitz presented evidence that her ex-husband would not have settled for a higher amount than he did. Because it takes both parties to reach an agreement, she has not shown that she could have settled her divorce for higher alimony. As to a jury trial, the only evidence Hopkinson presented to support her allegation that Labovitz's alleged fraud caused damages is an attorney's affidavit that, based on her ex-husband's income of $350,000 annually, she should have received at least $4,000 child support and $8,000 alimony. This expert considered nothing but the ex-husband's income, alimony payments, and child support payments, failing to factor in the substantial laundry list of additional benefits the ex-husband agreed to provide. This conclusory affidavit fails to rebut Labovitz's showing that Hopkinson suffered no actual damages that flowed from the alleged fraud. *Glynn County Fed. Employees Credit Union v. Peagler*, supra, 256 Ga. at 344.

2. Hopkinson contends that the trial court erred in finding that her damages were too speculative, arguing that *Szurovy v. Olderman*, 243 Ga. App. 449 (530 SE2d 783) (2000), provides a roadmap for establishing damages in a case such as hers. *Szurovy* is a legal malpractice case in which the plaintiff contended that her divorce lawyer failed to include alimony in the settlement agreement she reached with her ex-husband. This court held that,

> Because Ms. Szurovy failed to show that she could have negotiated a better agreement or that she would have obtained better results in a trial, she has failed to establish damages and proximate cause. As a matter of law, her claims of damage are speculative. Importantly, in the absence of any showing of harm, there is no evidence that any alleged negligence was the proximate cause of damage to the plaintiff.

(Footnote omitted.) Id. at 452-453. Even if *Szurovy* were a fraud case, its holdings support the trial court's order rather than Hopkinson's position.

3. Finally, Hopkinson asserts that the trial court erred in considering the jury's conclusion in her modification action against her ex-husband. Because we hold that the trial court did not err in finding that Labovitz was entitled to summary judgment on damages, we need not decide whether the trial court erred in granting summary judgment on this second ground. "A judgment right for any reason must be affirmed." (Citation omitted.) *Lyberger v. Robinson*, 207 Ga. App. 845, 846 (429 SE2d 324) (1993).

*Judgment affirmed. Johnson, P. J., and Adams, J., concur. Andrews, P. J., not participating.*

DECIDED OCTOBER 6, 2003 —
RECONSIDERATION DENIED OCTOBER 22, 2003 —

Helen C. Hopkinson, *pro se.*
*Troutman Sanders, Andrew M. Greene, Daniel S. Reinhardt*, for appellees.