A90A1301. JOINER et al. v. LEE et al.
(399 SE2d 516)

BEASLEY, Judge.

Mrs. Joiner and her husband appeal the grant of summary judg-ment to Dr. Lee, her gynecologist, and Dr. Rottenberg, her urologist, regarding removal of Mrs. Joiner's right ovary and Fallopian tube. She sued for battery and Mr. Joiner claimed loss of consortium.

In determining whether there are genuine issues of material fact remaining, we must view the evidence in favor of the Joiners, oppo-nents of the summary judgment motions. OCGA § 9-11-56; *Gowen v. Cady*, 189 Ga. App. 473, 474 (376 SE2d 390) (1988).

Mrs. Joiner began having irregular bleeding after the birth of her

youngest child. She underwent a dilation and curettage (D & C) in 1980 which alleviated the problem for a year. She began seeing Dr. Lee in 1985. In July 1986 she underwent a laproscopic examination and another D & C. Fibroid tumors were found. It was determined that a hysterectomy was necessary and Dr. Lee performed it September 17, 1986, at Shallowford Hospital. The consent form which she signed for that surgery listed a possible bilateral salpingo-oophorectomy, or removal of both ovaries and tubes.

During the vaginal hysterectomy, the left ovary was removed because of bleeding complications. The right ovary appeared normal. The next day, she experienced a vaginal discharge which was determined by urologist Rottenberg, brought in by Dr. Lee, to be urine. The leakage was caused by a stitch from the hysterectomy which had entered the bladder, creating a fistula (hole). A second surgery, to be performed by Dr. Rottenberg at St. Joseph's Hospital, was deemed necessary to close the fistula. It was about six weeks after the first surgery.

Mrs. Joiner signed an authorization form for the second surgery, pursuant to Dr. Rottenberg's pre-operative orders. The portions which figure in this dispute stated that she authorized and directed "Dr. Rottenberg and/or associates or assistants of his choice to perform the operation(s) or procedure(s) listed above [transvesical repair of vesico-vaginal fistula] including whatever incidental procedures and/or additional services, involving anesthesia, radiology, pathology and the like as may be advisable for my well-being. The general nature of the procedure(s) has been adequately explained to me. . . . I understand that, during the course of the operation or procedure, unforseen [sic] conditions may be revealed that necessitate an extension of the original procedure(s) or different procedures than those listed above. I therefore authorize and request that the above named physician, his assistants, or his designees perform such procedures as are necessary and desirable in the exercise of professional judgment. Except in cases of emergency or exceptional circumstances, these operations and procedures are therefore not performed unless the patient has had an opportunity to discuss them with his physician. I understand that I have the right to consent or refuse any proposed operation or special procedure." During the surgery, in which Dr. Lee participated along with Dr. Rottenberg's assisting partner, the right ovary and tube were removed upon the advice of Dr. Lee.

The claim against Dr. Lee was that he removed the right ovary and tube "when he had no permission to do so" and therefore committed a battery upon Mrs. Joiner. Plaintiffs stipulated that their cause of action was not one for medical malpractice in either the creation of the fistula or in the removal of the ovaries and tubes.

1. The order granting summary judgment does not specify its ba-

sis. One ground relied upon was that this was in reality a medical malpractice case and the failure of plaintiffs to submit an expert's affidavit in opposition to the defendant-doctors' affidavits and deposition testimony was fatal.

Plaintiffs are not relegated to a claim of medical malpractice under OCGA § 9-3-70. A cause of action for battery exists when objected-to treatment is performed without the consent of, or after withdrawal of consent by, the patient. OCGA § 51-1-13; *Williams v. Lemon*, 194 Ga. App. 249, 250 (2) (390 SE2d 89) (1990); *Bailey v. Belinfante*, 135 Ga. App. 574, 575 (2) (218 SE2d 289) (1975); *Mims v. Boland*, 110 Ga. App. 477, 481 (1 a) (138 SE2d 902) (1964). *Butler v. Brown*, 162 Ga. App. 376 (290 SE2d 293) (1982), and *Hutcheson v. McGoogan*, 162 Ga. App. 657 (292 SE2d 527) (1982), both recognize such claims. See also *Perna v. Pirozzi*, 92 NJ 446 (457 A2d 431) (NJ S. Ct. 1983); *Pizzalotto v. Wilson*, 437 S2d 859, 864 (14-15) (La. S. Ct. 1983); *Tabor v. Scobee*, 254 SW2d 474, 477 (5) (Ky. Ct. App. 1951). As stated by Justice Cardozo while on the New York appellate court, "Every human being of adult years and sound mind has a right to determine what shall be done with his own body; and a surgeon who performs an operation without his patient's consent commits an assault, for which he is liable in damages." *Schloendorff v. Society of N. Y. Hosp.*, 211 NY 125 (105 NE 92, 93) (1914).

Even if medical treatment is recommended and would be in the patient's best interest, the patient has the right to refuse such treatment in the absence of conflicting state interest. *In re L. H. R.*, 253 Ga. 439, 446 (321 SE2d 716) (1984); *Brandvain v. Ridgeview Institute*, 188 Ga. App. 106, 118 (3 c) (372 SE2d 265) (1988).

Consequently, plaintiffs need not meet the requisites of a medical malpractice case. The question is whether Mrs. Joiner's consent encompassed what transpired, i.e., the removal of the last ovary and tube and the participation of Dr. Lee.

2. The remaining enumerations urge numerous disputes as to material facts.

"In order '(t)o prevail on a motion for summary judgment (OCGA § 9-11-56), a defendant-movant is required to pierce the allegations of the complaint and to establish as a matter of law that the plaintiff could not recover under any theory fairly drawn from the pleadings and the evidence. (Cits.)' *Holiday Inns v. Newton*, 157 Ga. App. 436 (278 SE2d 85) (1981); [Cit.]" *Willis v. Allen*, 188 Ga. App. 390, 391 (373 SE2d 79) (1988).

Dr. Rottenberg's motion for summary judgment was based on both the consent forms signed for the St. Joseph's urologic surgery and the one signed for Dr. Lee's September gynecological surgery. Dr. Lee's motion covers only the St. Joseph's consent form. No authority is cited and we are aware of none holding that a medical consent form

signed for one operation or treatment is valid for another operation later and elsewhere. The issue thus centers on the circumstances of the consent and surgery at St. Joseph's.

The first question is whether it was undisputed that Dr. Lee was one of Dr. Rottenberg's "associates," "assistants" or "designees" under the terms of the consent form. Dr. Rottenberg's understanding after being brought in on the urological problem was that Dr. Lee wanted to be present at the St. Joseph's surgery to see where the errant stitch was located so the problem could be avoided in the future. He had no hospital privileges at St. Joseph's, and a temporary privilege was not obtained for this operation.

Dr. Lee first advised Dr. Rottenberg that he would be unable to attend the surgery due to scheduling problems. It was Dr. Rottenberg's intention to proceed with the fistula repair without Dr. Lee. At the last moment, Dr. Lee was able to rearrange his schedule. Mrs. Joiner learned from Dr. Rottenberg, while being readied for surgery, that Dr. Lee was present.

No one had mentioned to the Joiners that any reexamination of the pelvic area was planned or anticipated during the surgery. Removal of the right ovary was not contemplated as part of the surgery by Dr. Rottenberg and the ovary and tube would not have been removed had Dr. Lee not been present. Dr. Rottenberg believed, based on what Dr. Lee told him, that Mrs. Joiner's left ovary and tube were still in place and functioning. After discovering that this was not so, Dr. Rottenberg told Mr. Joiner he would not allow another doctor in his operating room again.

Dr. Lee's testimony was that he told Dr. Rottenberg to let him know when the surgery was going to take place and they would "do it together." The removal of the right ovary was not specifically discussed by him with the Joiners or Dr. Rottenberg before the surgery. He was unaware that the consent form did not list the salpingo-oophorectomy. He said he was aware during the surgery that the left ovary had been previously removed, although he acknowledged having told Dr. Rottenberg during the surgery that Mrs. Joiner's left side had "no problem."

It is unclear from either doctor's testimony just what the sequence of events was in the operating room and who did what with respect to the ovary and tube. Thus, the status of Dr. Lee in relation to Dr. Rottenberg within the context of the patient's consent, and his connection to the gynecological surgery, are for the jury's resolution.

Another impediment to summary judgment involves the "exceptional circumstances" provision of Mrs. Joiner's consent. Dr. Rottenberg deposed that he "thinks" he removed the organs with Dr. Lee's guidance. If that in fact occurred and Dr. Rottenberg believed that the left ovary was still present and functioning, then the event, ac-

cording to him, would not have been one of the "exceptional circumstances" which would have merited removal without the patient's specific consent to it.

The facts under which Dr. Lee concluded the situation merited removal of the remaining ovary and tube are in dispute. Mr. Joiner stated that Dr. Lee, immediately after the surgery, came to the hospital room and told him he had had to remove the right ovary, but there would be no problem because she still had the left one. Mr. Joiner said Dr. Lee disputed him when he reminded him that he had removed the left one in the previous surgery.

Dr. Lee deposed as follows concerning this fact. He initially denied making any statement to Mr. Joiner about the left tube and ovary. He was then asked "Did you ever tell [him] that [her] left tube and ovary were still present in her abdomen?" and answered "Not that I remember. I don't remember saying that at all." Mrs. Joiner later spoke with Dr. Lee on the telephone about the situation, and he told her he had been confused when he spoke with her husband. At his deposition, Dr. Lee initially said he did not remember making such a statement to Mrs. Joiner, then denied having done so.

While Dr. Lee's testimony is not self-contradictory so as to be governed by *Prophecy Corp. v. Charles Rossignol, Inc.*, 256 Ga. 27 (343 SE2d 680) (1986), his failures of recollection as to his conversations concerning the left ovary create questions of fact involving credibility. These are inappropriate for resolution on summary judgment. *Griffin v. Housing Auth. of Savannah*, 169 Ga. App. 621, 622 (1) (314 SE2d 462) (1984); *Whirlpool Corp. v. Hurlbut*, 166 Ga. App. 95, 97 (1) (303 SE2d 284) (1983); *Jones v. Howard*, 153 Ga. App. 137, 142 (2) (264 SE2d 587) (1980).

The doctors argue that whether or not Dr. Lee remembered that he had previously removed her left ovary and tube is not a genuine issue of material fact, but it is. Dr. Lee contends that he concluded the state of her ovary and tube were an "exceptional circumstance" under the terms of the consent form so that removal was needed. It is not conclusively shown, however, that if the jury concluded he did not remember during surgery that he had previously removed the left ovary, as he now contends he did, such would not have changed the "exceptional circumstance" into the type of elective surgery to be done only with the patient's consent in his mind as it did in Dr. Rottenberg's.

Because of the inconsistencies between and within the doctors' testimonies, and considered in light of plaintiffs' and their witnesses' testimonies, defendants have not established as a matter of law that Dr. Lee's involvement was within the scope of the consent or that the circumstances were "exceptional" so that removal of the right ovary and tube was "necessary and desirable in the exercise of professional

judgment." Thus, consent by Mrs. Joiner has not been shown as a matter of law.

*Judgment reversed. Deen, P. J., and Pope, J., concur.*

DECIDED NOVEMBER 9, 1990 —
REHEARING DENIED NOVEMBER 28, 1990 —

*Drew, Eckl & Farnham, James M. Poe,* for appellants.

*Sullivan, Hall, Booth & Smith, Terrance C. Sullivan, Michael A. Pannier, Alston & Bird, Dow N. Kirkpatrick II, Karen L. Abrahams,* for appellees.