S98G1141. LABOVITZ et al. v. HOPKINSON.
(519 SE2d 672)

BENHAM, Chief Justice.

Appellants, an attorney and his former law firm, represented appellee Helen Hopkinson in a divorce proceeding which resulted in the entry of a judgment and decree of divorce on November 4, 1994. On October 30, 1996, appellee, acting pro se, filed a complaint seeking damages for professional malpractice allegedly committed by her attorneys during their representation of her in the divorce proceeding. Appellee alleged that appellants had negligently failed to obtain accurate sworn information related to her estranged husband's income and financial circumstances; negligently represented to her that they had obtained such information when they had not; failed to

---

[3] *Batson v. Kentucky,* 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986).

correctly advise her of or affirmatively misrepresented her husband's income and finances; and advised, recommended, and pressured her to accept a settlement substantially below the amount to which she would have been entitled.

Appellee did not file contemporaneously with her complaint the expert affidavit required in an action for damages alleging professional malpractice (see OCGA § 9-11-9.1 (1989)),[1] but invoked the statutory forty-five-day extension of time by asserting that the complaint was filed within ten days of the expiration of the statute of limitation and that an expert's affidavit could not be prepared.[2] Appellee did not file the required affidavit within the forty-five-day period, and the trial court denied her pro se motion for a six-month extension of time to obtain the affidavit. After the expiration of the 45-day period, appellee, still acting pro se, amended her complaint to seek damages from appellants for fraud and misrepresentation which purportedly occurred during their representation of her in the divorce proceedings.[3] The trial court granted appellants' motion to dismiss the amended complaint for failure to state a claim. The Court of Appeals affirmed the dismissal of the legal malpractice claim since appellee had not filed an expert affidavit, but reversed the dismissal of the amendment to the complaint. *Hopkinson v. Labovitz*, 231 Ga. App. 557 (499 SE2d 338) (1998). We granted appellants' petition for a writ of certiorari, asking what effect, if any, the doctrine of res judicata would have on a non-malpractice claim arising out of the same acts as a malpractice claim which has been dismissed for failure to file the necessary expert affidavit.

1. The trial court did not err when it dismissed appellee's professional malpractice claims since appellee failed to file an expert affi-

---

[1] The General Assembly's 1997 amendment to OCGA § 9-11-9.1 is not applicable to the case at bar since the amendment expressly states it is applicable only to cases filed on or after July 1, 1997. Ga. L. 1997, p. 916, § 2; *Mug-A-Bug Pest Control v. Vester*, 270 Ga. 407 (1) (509 SE2d 925) (1999). Accordingly, this case is governed by the 1989 version of the statute.

[2] OCGA § 9-11-9.1 (b) (1989) states:
The contemporaneous filing requirement of subsection (a) of this Code section shall not apply to any case in which the period of limitation will expire within ten days of the date of filing and, because of such time constraints, the plaintiff has alleged that an affidavit of an expert could not be prepared. In such cases, the plaintiff shall have 45 days after the filing of the complaint to supplement the pleadings with the affidavit. The trial court may, on motion, after hearing and for good cause extend such time as it shall determine justice requires.

[3] In her amended complaint, appellee alleged that her former attorneys had purposely and knowingly misrepresented her husband's income and earnings to her; had maliciously concealed her husband's true income from her; and had fallaciously misguided her to accept a lower settlement when they had superior knowledge which they wantonly failed to disclose. In addition to general damages for the alleged fraud and misrepresentation, appellee sought exemplary damages for appellants' alleged knowingly fraudulent, deceitful, wilful and wanton conduct.

davit within the 45-day statutory extension and the trial court found that appellee had not presented the "good cause" necessary to justify a further extension of time in which to file the required affidavit. *Archie v. Scott*, 190 Ga. App. 145 (4) (378 SE2d 182) (1989).[4]

2. We now address whether the doctrine of res judicata authorizes the dismissal of the remainder of appellee's amended complaint. Res judicata is defined in OCGA § 9-12-40 as follows:

> [a] judgment of a court of competent jurisdiction shall be conclusive between the same parties and their privies as to all matters put in issue or which under the rules of law might have been put in issue in the cause wherein the judgment was rendered until the judgment is reversed or set aside.

The doctrine of res judicata prevents re-litigation of matters that were or could have been litigated in a previously-adjudicated action. *Waldroup v. Green County Hosp. Auth.*, 265 Ga. 864 (1) (463 SE2d 5) (1995). In order for res judicata to bar a subsequent action, it must be established that an identity of parties and subject matter exist between the two actions, and that a court of competent jurisdiction entered an adjudication in the earlier action. *Waggaman v. Franklin Life Ins. Co.*, 265 Ga. 565 (1) (458 SE2d 826) (1995). Appellee, the party against whom the res judicata defense is asserted, concedes that the case at bar involves identity of parties and subject matter. Our focus, then, is on appellants' contention that appellee's failure to file an expert affidavit within the statutory 45-day period constituted, by operation of law, an adjudication on the merits in the professional malpractice action upon the expiration of the 45-day period, which adjudication barred appellee from subsequently amending her complaint.

OCGA § 9-11-9.1 (b) (1989) does not state that the failure to file an affidavit within the 45-day statutory extension will result in the complaint being dismissed by operation of law. Compare, e.g., OCGA § 9-2-60 (b) ("Any action . . . in which no written order is taken for a period of five years *shall automatically stand dismissed. . . .*");

---

[4] OCGA § 9-11-9.1 (e) (1989) states that a complaint alleging professional malpractice in which an expert affidavit is not contemporaneously filed is "subject to dismissal for failure to state a claim. . . ." The case at bar comes to us under subsection (b) of § 9-11-9.1, and subsection (e) expressly exempts subsection (b) complaints from its coverage. The 1989 version of subsection (b) says nothing about the status of professional malpractice complaints when no expert affidavit is filed before the expiration of the statutory extension of time and any discretionary extensions given by the trial court. The 1997 version of OCGA § 9-11-9.1 (b) fills this void by stating that such a complaint is "subject to dismissal for failure to state a claim."

OCGA § 17-7-170 (b) (a person not tried for a crime within a specified period of time of the filing of a demand for speedy trial *"shall be absolutely discharged and acquitted . . .");*[5] OCGA § 18-4-63 (b) ("the garnishment proceeding based on that affidavit [on which no summons of garnishment has been issued for two years] *shall automatically stand dismissed.");* OCGA § 34-9-105 (b) ("if the court does not hear the case within 60 days . . . the decision of the board shall be considered affirmed *by operation of law . . .");* and OCGA § 50-15-2 (if a bond ordered by the court in a public lawsuit is not filed, "the opposing party or parties or intervenors *shall be dismissed by operation of law . . .")* (emphases supplied). Instead, OCGA § 9-11-9.1 (b) (1989) authorizes a trial court to grant to a plaintiff who presents good cause therefor an extension of time beyond the 45-day statutory extension. The trial court is vested with broad discretion to determine if "good cause" exists for a further extension, and the exercise of that discretion is not subject to reversal on appeal unless manifestly abused. *Piedmont Hosp. v. Draper*, 205 Ga. App. 160 (2) (421 SE2d 543) (1992). While appellee sought an additional extension prior to the expiration of the 45-day period and was denied, § 9-11-9.1 (b) (1989) does not, by its terms, limit a subsection (b) plaintiff to request a "good cause" extension of time within that 45-day period. See *Brake v. Mintz*, 193 Ga. App. 662, 664 (388 SE2d 715) (1989) ("OCGA § 9-11-9.1 . . . does not distinguish between motions made within or made without the 45-day extension period."). In light of the lack of statutory language mandating automatic dismissal of a subsection (b) plaintiff's professional malpractice complaint if an expert affidavit is not filed by the expiration of the 45-day extension, and the exercise of discretion statutorily bestowed on a trial court faced with a subsection (b) plaintiff, we conclude that appellee's failure to file an expert affidavit before the 45-day statutory extension expired did not result in an automatic adjudication on the merits of appellee's professional malpractice claim. Accordingly, application of the doctrine of res judicata cannot serve as the basis for dismissing appellee's amended complaint.

3. The question then presented is the correctness of the Court of Appeals' determination that appellee's amendment to her complaint was incorrectly dismissed by the trial court because the amendment presented claims for which no expert affidavit was required. *Hopkinson v. Labovitz*, supra, 231 Ga. App. at 559. The Court of Appeals reached its conclusion by reasoning that the § 9-11-9.1 affidavit requirement is applicable only to that subset of professional malprac-

---

[5] The discharge and acquittal occurs by operation of law at the close of the last term at which the defendant could be tried timely. *Smith v. State*, 192 Ga. App. 604 (386 SE2d 370) (1989).

tice actions which allege a negligent act or omission or breach of contract for failure to perform professional services in accordance with the professional obligation of care, and appellee's allegations of fraud did not call into question the professional standard of care applicable to attorneys since it is improper for anyone to defraud another person. Id. We agree with the Court of Appeals that OCGA § 9-11-9.1, by its very language, is applicable only to those professional malpractice actions alleging professional negligence.

OCGA § 9-11-9.1 (a) (1989) requires an expert affidavit to be filed "[i]n any action for damages alleging professional malpractice," and the affidavit to "set forth specifically at least one negligent act or omission claimed to exist and the factual basis for each such claim." The appellate courts of Georgia have interpreted the statute as requiring an expert affidavit *only* in professional *negligence* actions. *Barr v. Johnson*, 189 Ga. App. 136, 137 (375 SE2d 51) (1988) (the statute applies "to any action for professional malpractice by negligent act or omission, sounding in tort or by breach of contract for failure to perform professional services in accordance with the professional obligation of care."). See also *Jordan, Jones & Goulding v. Wilson*, 197 Ga. App. 354 (2) (398 SE2d 385) (1990); *Tante v. Herring*, 264 Ga. 694, 695 (453 SE2d 686) (1994) (a claim for breach of fiduciary duty against a lawyer "is not one for professional malpractice based on negligence involving [the lawyer's] performance of legal services, and, therefore, no expert affidavit is required . . ."); *Lutz v. Foran*, 262 Ga. 819 (2) (427 SE2d 248) (1993) ("A professional malpractice action is merely a professional negligence action . . ."). Cf. *Housing Auth. of Savannah v. Greene*, 259 Ga. 435, 436 (383 SE2d 867) (1989); *Richmond Leasing Co. v. Cooper, Cooper &c.*, 207 Ga. App. 623 (1) (428 SE2d 603) (1993) (affidavit required when clear and palpable case of professional negligence alleged).

When § 9-11-9.1 is construed as applicable only to actions alleging professional negligence, the appellate courts have held that it is unnecessary to file an expert affidavit with a complaint filed against a professional if the complaint alleges the commission of an injurious *intentional* act by the professional during the existence of a professional relationship between the plaintiff and defendant. See, e.g., *Cleveland v. Albany Urology Clinic*, 235 Ga. App. 838 (2) (509 SE2d 664) (1998), cert. granted, S99G0600 (no § 9-11-9.1 affidavit necessary to support allegation of battery against physician as allegation is not one of negligence); *Boggs v. Bosley Med. Inst.*, 228 Ga. App. 598 (492 SE2d 264) (1997) (no § 9-11-9.1 affidavit necessary to support allegation that physician committed fraud by intentionally misrepresenting the number of surgical treatments necessary since allegation was not one of negligent misdiagnosis); *Crawford v. Johnson*, 227 Ga. App. 548 (2) (b) (489 SE2d 552) (1997) (claims against attorney not

involving professional negligence, i.e., fraud and conversion, do not require § 9-11-9.1 affidavit); *Hilton v. Callaghan*, 216 Ga. App. 145 (453 SE2d 509) (1995) (§ 9-11-9.1 affidavit not necessary to support allegation of fraud against plaintiffs' accountant); *Hodge v. Jennings Mill*, 215 Ga. App. 507 (451 SE2d 66) (1994) (no § 9-11-9.1 affidavit necessary to support fraud claim against attorneys); *Newton v. Porter*, 206 Ga. App. 19 (424 SE2d 323) (1992) (no § 9-11-9.1 affidavit necessary to pursue battery claim against physician who punctured plaintiff's duodenum during bilateral tubal ligation). But see *Sparks v. Kroger Co.*, 200 Ga. App. 135 (2) (407 SE2d 105) (1991) (breach of implied warranty claim against pharmacist who allegedly dispensed wrong drug needed § 9-11-9.1 affidavit because professional negligence must be shown to establish breach of warranty).

At the same time as the courts have limited the application of § 9-11-9.1 to professional negligence actions, they have recognized that professional malpractice encompasses more than professional negligence. In *Gillis v. Goodgame*, 199 Ga. App. 413 (3) (404 SE2d 815) (1991), rev'd on other grounds, 262 Ga. 117 (414 SE2d 197) (1992), and *Hodges v. Jennings Mill*, supra, 215 Ga. App. 507, the Court of Appeals quoted from the definition of "malpractice" found in Webster's Third International Dictionary:

> "a dereliction from professional duty whether intentional, criminal, or merely negligent by one rendering professional services that results in injury, loss, or damage to the recipient of those services or to those entitled to rely upon them or that affects the public interest adversely; the failure of one rendering professional services to exercise that degree of skill and learning commonly applied under all the circumstances in the community by the average prudent reputable member of the profession with the result of injury, loss, or damage to the recipient of those services or to those entitled to rely upon them."

The statutory language of OCGA § 9-11-9.1 makes it susceptible to more than one construction. The statute expressly requires that an expert affidavit be filed in "*any* action for damages alleging professional malpractice, . . ." but goes on to describe the contents of the required affidavit as setting forth "specifically at least one negligent act or omission claimed to exist. . . ." The second phrase may be a legislative pronouncement that only an action for damages alleging a claim of professional *negligence* requires an expert affidavit, or the phrase may be merely exemplary, i.e., it sets out the minimum affidavit required for the most common-place professional malpractice actions, those in which professional negligence is alleged.

Faced with an ambiguous legislative enactment, it is the duty of the courts "to seek diligently to arrive at the legislative intent. . . ." *Lamons v. Yarbrough,* 206 Ga. 50 (hn. 1) (55 SE2d 551) (1949).

> It is, of course, fundamental that legislative intent is the determining factor in judicial construction of ambiguous legislative enactments. [Cits.] In arriving at this intent of the legislature, it is also fundamental that all of the words of the statute are to be given due weight and meaning ([cit.]) and that the court is not authorized to disregard any of the words of the statute in question unless the failure to do so would lead to an absurdity manifestly not intended by the legislature.

*Boyles v. Steine,* 224 Ga. 392, 395 (162 SE2d 324) (1968); OCGA § 1-3-1 (a). "That construction which will uphold a statute in whole and in every part is to be preferred." *Exum v. City of Valdosta,* 246 Ga. 169 (1) (269 SE2d 441) (1980). OCGA § 9-11-9.1's expert affidavit requirement was enacted "to protect professionals against the harm done by groundless malpractice litigation. . . ." R. D. Brussack, *Georgia's Professional Malpractice Affidavit Requirement,* 31 Ga. L. R. 1031, 1033 (1997). See also *Housing Auth. of Savannah v. Greene,* supra, 259 Ga. at 439 ("The purpose of OCGA § 9-11-9.1 is to reduce the number of frivolous malpractice suits being filed . . ."). The preamble to the initial legislation contains the means by which the General Assembly sought to accomplish its goal: "To provide that in any case in which professional malpractice is alleged an affidavit of an expert competent to testify setting forth *the particulars of the claim* shall be filed with the complaint." (Emphasis supplied.) Ga. L. 1987, p. 887. It is clear that the legislature intended to enact a means by which the filing of frivolous professional malpractice actions would be curtailed. However, despite using broad language in the statute's preamble, the legislature used very limiting language in the statute to describe the means of curtailment, i.e., the affidavit of an expert competent to testify. In so doing, they limited § 9-11-9.1 to only those actions for professional *negligence* by enacting a statute which stated that the necessary expert affidavit had to set forth "a negligent act or omission claimed to exist and the factual basis for each claim." OCGA § 9-11-9.1 (a). Inasmuch as the General Assembly displayed in the preamble an express recognition of the broad coverage § 9-11-9.1 could have and then enacted a statute with more limited language, we conclude that the legislative intent was to enact a statute which sought to reduce the number of frivolous professional malpractice actions by placing a procedural hurdle before those plaintiffs who sought damages for professional *negligence.* Those claims grounded

on a professional's *intentional* acts which allegedly resulted in injury to one with whom the professional had a professional relationship are not required to be accompanied by an expert affidavit.

Construing § 9-11-9.1 as having no application in actions alleging intentional injurious misconduct on the part of professionals is not furthering an "end-run" around the expert affidavit requirement; instead, it fosters a plaintiff's right to pursue the cause of action of the plaintiff's choice. For example, a patient may pursue a claim for medical malpractice or battery when objected-to treatment is performed without consent (*Joiner v. Lee*, 197 Ga. App. 754 (1) (399 SE2d 516) (1990)), with the recognition that the plaintiff must file an expert affidavit in one cause of action, and establish that the physician acted intentionally in the other. *Newton v. Porter*, supra, 206 Ga. App. at 20. In light of the limited coverage of § 9-11-9.1, we affirm the Court of Appeals' decision that appellee's claim that her attorneys committed intentional acts which caused her harm do not require a § 9-11-9.1 expert affidavit, and the trial court erred when it dismissed that portion of appellee's complaint.

*Judgment affirmed. All the Justices concur.*

DECIDED JULY 13, 1999.

*Troutman Sanders, Daniel S. Reinhardt, C. LeeAnn McCurry,* for appellants.

*Jones, Copeland, Lefkowitz & Greer, Taylor W. Jones,* for appellee.