A05A0497. KING v. DODGE COUNTY HOSPITAL AUTHORITY
et al.
(616 SE2d 835)

SMITH, Presiding Judge.
This appeal presents a question regarding the application of the affidavit requirement in OCGA § 9-11-9.1 in an action alleging battery. Specifically, we are required to determine whether, once a procedure is begun, a medical professional who continues with the procedure after the patient instructs the professional to stop is exercising medical judgment. If so, an expert affidavit is required under OCGA § 9-11-9.1. Under the circumstances presented here, we agree with the trial court that medical judgment was involved and an expert affidavit was necessary.

The facts, as shown by the record, are as follows. During Pamela King's hospitalization at Dodge County Hospital, her doctor ordered the administration of an intravenous antibiotic. Melinda Kehayes, a registered nurse employed by the hospital, was assigned to care for King. Kehayes began attempting to start the intravenous line necessary to administer the prescribed drug. After several unsuccessful attempts to insert the IV in King's forearm, Kehayes began examining King's left hand to find a possible site. King became very upset, told Kehayes that she was left-handed, and informed her that she did not wish Kehayes to continue searching for a site in that location. She requested that Kehayes stop and make no further attempts to start the IV before consulting King's physician to see whether an oral antibiotic might be used.

Despite King's protests, Kehayes made several further unsuccessful attempts to start the IV in King's left hand. Kehayes finally left to telephone the doctor, who prescribed an oral antibiotic. When King's husband arrived, he found King crying out in pain from the multiple needle sticks. King alleged in her complaint that she sustained a neurological injury to her left hand as a result of Kehayes's

battery. Dodge County Hospital and Dodge County Hospital Authority were joined as defendants under the theory of respondeat superior. See *Robinson v. Med. Center of Central Ga.*, 217 Ga. App. 8, 9 (456 SE2d 254) (1995). The defendants answered and filed a motion to dismiss King's complaint on the ground that the action was one for medical malpractice and King had not attached an expert affidavit.

King contends that the trial court erred in finding that because Kehayes's decision to ignore King's request to stop involved medical judgment, her complaint required an expert affidavit. She also maintains that the trial court erred in finding that she did not withdraw her consent for treatment. Because these contentions are intertwined, we address them together.

Under OCGA § 9-11-9.1, a plaintiff alleging professional malpractice is required to file an expert affidavit with the complaint setting forth at least one "negligent act or omission claimed to exist," as well as the factual basis for that claim.[1] This requirement applies only to complaints alleging professional *negligence*. *Labovitz v. Hopkinson*, 271 Ga. 330, 336 (519 SE2d 672) (1999). "Those claims grounded on a professional's *intentional* acts which allegedly resulted in injury to one with whom the professional had a professional relationship are not required to be accompanied by an expert affidavit." Id. at 336-337. King argues that no professional negligence is involved here because her claim was made under a theory of battery, which is an intentional tort, and that an affidavit was therefore not required.

An action for battery arises in the medical context when a medical professional makes unauthorized contact with a patient during examination, treatment, or surgery. *Harris v. Leader*, 231 Ga. App. 709, 710 (499 SE2d 374) (1998). Unless consensual, "[i]n the interest of one's general right of inviolability of his person, any unlawful touching of that type is a physical injury to the person and is actionable." (Citation and punctuation omitted.) Id. "A cause of action for battery exists when objected-to treatment is performed without the consent of, or after withdrawal of consent by, the patient. OCGA § 51-1-13; [cits.]" *Joiner v. Lee*, 197 Ga. App. 754, 756 (1) (399 SE2d 516) (1990). "[A] medical 'touching' without consent is like any other touching without consent: it constitutes the intentional tort of battery for which an action will lie." *Ketchup v. Howard*, 247 Ga. App. 54, 56 (543 SE2d 371) (2000).

An action for professional negligence, on the other hand, exists when the plaintiff's claim addresses "the propriety of a professional

---

[1] Nurses are defined in the statute as professionals to whom the statute applies. OCGA § 9-11-9.1 (f) (11).

decision rather than . . . the efficacy of conduct in the carrying out of a decision previously made." *Upson County Hosp. v. Head*, 246 Ga. App. 386, 389 (1) (540 SE2d 626) (2000). The determinative factor is whether "the task in question require[s] the exercise of professional judgment and skill." *CenTrust Mtg. Corp. v. Smith & Jenkins, P.C.*, 220 Ga. App. 394, 396 (469 SE2d 466) (1996). Whether the alleged act constitutes professional negligence — in this case medical malpractice — is a question of law for the trial court. *Dent v. Mem. Hosp. of Adel*, 270 Ga. 316, 318 (509 SE2d 908) (1998).

Our task is determining which of these principles apply to the facts in this case. Counsel present strong arguments on both sides, and the question truly is an extremely close one. Appellees point out that in *Head*, supra, 246 Ga. App. at 389, this court noted that a plaintiff could maintain an action for simple negligence against professionals if the act or conduct in issue does not call "into question the conduct of the professional in his area of expertise," (footnote omitted), id., such as a mere clerical, administrative, or routine act. While we agree with appellees that starting an IV line is not an "administrative, clerical, or routine act[ ] demanding no special expertise," id., neither is King alleging negligence.

King reminds us that as far back as 1964, this court held that even when consent is given for a medical procedure, it may be withdrawn sufficiently to expose the professional to a suit for assault and battery if the professional continues treatment. *Mims v. Boland*, 110 Ga. App. 477, 483 (1) (b) (138 SE2d 902) (1964). *Mims* also set forth the test for determining whether consent, once given, was effectively withdrawn:

> (1) The patient must act or use language which can be subject to no other inference and which must be unquestioned responses from a clear and rational mind. These actions and utterances of the patient must be such as to leave no room for doubt in the minds of reasonable men that in view of all the circumstances consent was actually withdrawn. (2) When medical treatments or examinations occurring with the patient's consent are proceeding in a manner requiring bodily contact by the [professional] with the patient and consent to the contact is revoked, it must be medically feasible for the [professional] to desist in the treatment or examination at that point without the cessation being detrimental to the patient's health or life from a medical viewpoint.

Id. at 483-484. Perhaps more importantly, the *Mims* court held that "[t]he burden of proving each of these essential conditions is upon the

plaintiff, and with regard to the second condition, it can only be proved by medical evidence as medical questions are involved." Id. at 484.

It appears to us that this factor, so well stated by the court in *Mims*, is the determinative factor. Even if we conclude that King acted clearly and spoke in a manner that left no doubt in the minds of reasonable people that she was revoking her consent to the procedure, here, as in *Mims*, "the suit [fails] nevertheless because the second essential was not proven." Id. at 485.[2]

In her brief, King attempts to minimize the issue created by the rationale for requiring medical evidence by providing no supporting analysis and simply *concluding* that the procedure in question was not an emergency and that Kehayes's conduct raises no issues with regard to any applicable standard of care. Indeed, it might seem to have been a matter of common sense, particularly viewing it with the perfect clarity of hindsight, that Kehayes should have called the doctor earlier. Because of her background, training, and experience, however, Kehayes had medical knowledge to which we are not privy. And, as appellees point out, concluding at this juncture that the situation was not an emergency "begs the very question raised in this appeal, i.e., what would a medical professional say about this issue?"

We must bear in mind that the crucial issue is not whether Kehayes acted improperly or whether she should have stopped trying to insert the IV line and called the doctor earlier. Rather, the issue is whether in making that decision, she was required to weigh alternatives and to apply her specialized knowledge and skill. While she may have known that King fervently wanted her to stop, she still had orders from King's physician requiring intravenous administration of the antibiotics. She had to assess her capability of accomplishing what the doctor ordered in light of her difficulty in finding a vein in King's arm. She was required to decide whether King's illness absolutely required this mode of treatment or whether it could safely be abandoned. These questions all required professional decision-making. The fact that Kehayes may have made an improper decision is irrelevant to this issue; if King believed that was so, her remedy

---

[2] We agree with appellees that even though *Mims* was decided before the enactment of OCGA § 9-11-9.1, it "foreshadowed the rational[e] for the enactment of OCGA § 9-11-9.1." The *Mims* court stated that its two-part test was necessary because

[t]o permit a lesser standard would be to subject the medical profession to an endless possibility of harassment and would place upon them a potential of punishment in every case where their examination or treatment results in less than complete success. The possibility of irresponsible harassment is something the medical profession should not be called upon to bear, dealing as it does with human life and human frailty.

Id. at 484.

was a suit for professional malpractice because Kehayes made an improper medical judgment.

In summary, even if King's consent was withdrawn, the issue facing Kehayes, i.e., whether she should abandon her attempts at starting the IV line, was one that required her to apply her professional experience, expertise, and judgment to resolve. Lacking medical expertise, the factfinder could not resolve this issue without the assistance of expert medical opinion, as required by OCGA § 9-11-9.1. See *Mims*, supra, 110 Ga. App. at 484. Because King failed to file an expert affidavit, the trial court did not err in granting the motion to dismiss.

*Judgment affirmed. Ellington and Adams, JJ., concur.*

DECIDED JUNE 27, 2005.

*Deming, Parker, Hoffman, Green & Campbell, Beverly R. Adams,* for appellant.

*Hall, Booth, Smith & Slover, Virginia N. Hall, Anthony A. Rowell,* for appellees.