**SECOND DIVISION**
**MIKELL, P. J.,**
**BARNES, P. J., and ADAMS, J.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)**
**http://www.gaappeals.us/rules/**

**July 11, 2012**

# In the Court of Appeals of Georgia

A12A0513. LOCKHART v. THE BOARD OF REGENTS OF THE
     UNIVERSITY SYSTEM OF GEORGIA, et al.

MIKELL, Presiding Judge.

Lynne Lockhart filed a medical negligence action against the Board of Regents
of the University System of Georgia (the "Board of Regents")[1] and against MCG
Health, Inc. ("MCGHI"). The Board of Regents moved to dismiss and MCGHI moved
for summary judgment. The trial court granted both motions, and Lockhart appeals.
For the reasons that follow, we affirm in part and reverse in part.

---

[1] Lockhart specifically identified the Medical College of Georgia Dentistry
School as a department or agency within the purview of the Board of Regents.

Lockhart sought treatment for her teeth from Steven K. Nelson, DMD,[2] at the Medical College of Georgia School of Dentistry ("Dental School"). She deposed that Dr. Nelson was supposed to put three implants in her upper left jaw, and that she never authorized him to work on her bottom teeth. She came to an October 13, 2004, dental appointment expecting work to be done for the upper implants. When Dr. Nelson began working on her bottom teeth, however, Lockhart assumed he was "doing some bonding, maybe getting some stain off, maybe getting some decay out. I never once, my hand to God, thought that he was drilling them down to put crowns on them." When Lockhart got up to spit in the sink, she looked in a mirror and saw that her lower teeth had been drilled down to "nubs." Dr. Nelson made temporary crowns for the lower teeth, then told her someone would call her when she needed to come back for permanent crowns. No one ever called Lockhart, so she contacted the dental clinic four months later, in February 2005, and was given an appointment. She deposed that when Dr. Nelson removed the temporary crowns, her teeth were "bloody, stubby, soft-looking things" and when Dr. Nelson saw them, he "freaked out." This litigation ensued.

---

[2] Although Lockhart's complaint also named Dr. Nelson as one of the defendants, Dr. Nelson was dismissed from the case prior to the filing of the motions giving rise to this appeal.

1. Lockhart argues that the trial court erred in granting the Board of Regents' motion to dismiss for lack of subject matter jurisdiction, finding that the Board of Regents was immune from liability because of sovereign immunity granted to the state in the Georgia Tort Claims Act, ("GTCA"), OCGA § 50-21-20 et seq.

> [S]overeign immunity is a threshold issue for the trial court's consideration. The Georgia Tort Claims Act sets forth exceptions to a state agency's sovereign immunity, which are subject to certain limitations; a plaintiff bears the burden of establishing that a state agency's conduct is excepted from sovereign immunity. Moreover, we review a trial court's grant of a motion to dismiss on sovereign immunity grounds de novo, bearing in mind that a motion to dismiss may be granted only when a plaintiff would not be entitled to relief under any set of facts that could be proven in support of its claim. Nevertheless, when the trial court determines a jurisdictional issue based upon conflicting factual issues, on appeal, the court's finding on a factual issue will be sustained if there is evidence which authorizes the finding.[3]

Specifically, the trial court found that Lockhart's claim fell within an exception to the state's waiver of sovereign immunity under OCGA § 50-21-24 (7), "which provides that "[t]he state shall have no liability for losses resulting from: . . . [a]ssault,

---

[3] (Punctuation and footnotes omitted.) *Sadler v. Dept. of Transp. v. State of Ga.*, 311 Ga. App. 601, 603 (716 SE2d 639) (2011).

3

battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, or interference with contractual rights."

The trial court acknowledged that no Georgia appellate case has examined a technical battery such as that presented in the instant case in the context of the GTCA's assault and battery exception, but reasoned that in addition to intentional batteries, even such unintentional batteries as unauthorized medical touching fall within the GTCA's ambit. The trial court granted the Board of Regents' motion to dismiss, finding that Lockhart suffered permanent damage as a result of dental work done on her lower teeth without her permission and that this damage resulted from unauthorized medical touching amounting to a battery.

Lockhart's complaint and accompanying expert affidavit do not allege injury resulting only from the unauthorized medical touching, however. Her complaint alleges separate acts of negligence. Specifically, Lockhart's complaint argues that "all Defendants were negligent in that the MCG School of Dentistry and Dr. S. K. Nelson *prepared Plaintiff's lower teeth for restoration* and *applied temporary caps* and *failed to timely follow up on removing the temporary caps and replacing with permanent*

4

*caps.*[4] Also, Lockhart's complaint alleged that "*each act of negligence* took place in Richmond County, Georgia."[5]

The complaint further alleged that the Board of Regents failed to exercise the degree and skill required by the medical profession in similar conditions "as specifically stated in the affidavit of Nancy B. Napier, DMD." Napier, as Lockhart's expert, focused not on the initial unauthorized treatment, but on the subsequent deterioration of the teeth after Dr. Nelson failed to contact Lockhart for a follow-up appointment. Dr. Napier stated in her affidavit that the Dental School and Dr. Nelson

> failed to exercise that degree of skill and care ordinarily required by the dental profession in general under like conditions and similar circumstances in that MCG School of Dentistry, its agents, employees including Dr. S. K. Nelson *left the dental treatment performed on teeth [ ]23, 24, 25 and 26 in a 'temporary' state of restoration longer than they should have been*. The design and fabrication of the temporary/provision restoration for these teeth were inadequate to prevent leakage over an extended period of time. *This caused further deterioration of her natural teeth* . . . . In order to have properly treated the patient under these circumstances, the standard of care required MCG School of Dentistry, its agents, employees including Dr. S. K.

---

[4] (Emphasis supplied.)

[5] (Emphasis supplied.)

5

Nelson to properly design and fabricate temporaries for teeth 23, 24, 25 and 26 and *to timely replace the same with permanent restoration*.[6]

Viewing all allegations in the complaint as true, as we must,[7] we recognize that two instances of injury are presented: 1) the unauthorized grinding down of Lockhart's teeth, and 2) the failure to ensure that the temporary caps were removed and replaced in time to prevent damage to the teeth.

(a) We find that the trial court was authorized to dismiss on grounds of subject matter jurisdiction Lockhart's claim of negligence regarding Dr. Nelson's work on her lower teeth. That action falls within the purview of the assault and battery exception in OCGA § 50-21-24 (7).

Although Lockhart argues that "the assault and battery exception should only apply in cases where the perpetrator acted with the intent to cause harm to the victim[,] [h]er suggestion is without merit. In the context of OCGA § 50-21-24 (7), the legislature clearly used the terms 'assault' and 'battery' in their tort sense."[8] The

---

[6] (Emphasis supplied).

[7] *Oconee Community Svc. Bd. v. Holsey*, 266 Ga. App. 385 (597 SE2d 489) (2004).

[8] (Citation and punctuation omitted.) *Davis v. Standifer*, 275 Ga. App. 769, 775 (1) (b) n. 5 (621 SE2d 852) (2005).

6

cases cited by the parties interpreting OCGA §50-21-24 (7)'s battery exception address the state's liability for intentional batteries such as a shooting or a rape,[9] but this exception also applies in the context of unauthorized medical touching.

Our courts have found that unauthorized medical touching, similar to what happened to Lockhart when Dr. Nelson worked on her lower teeth rather than her upper teeth, is a battery sounding in tort.[10] For example, in *Joiner v. Lee*,[11] the plaintiff, after signing a consent form contemplating the possible removal of both ovaries, had one ovary removed, then returned for further surgery on a vaginal fistula and signed a second consent form for that surgery.[12] When the physician removed the other ovary during the second surgery, the plaintiff sued, alleging that as she had not

---

[9] See, e.g., *Ga. Dept. of Human Resources v. Hutchinson*, 217 Ga. App. 70-71 (456 SE2d 642) (1995) (plaintiff raised failure to warn claim after state placed juvenile in plaintiff's home, and he shot plaintiff); *Christensen v. State*, 219 Ga. App. 10, 13 (6) (464 SE2d 14) (1995) (three elderly plaintiffs brought suit after they were raped and assaulted by a convicted rapist on parole after the state denied him medical and psychiatric care).

[10] *King v. Dodge County Hosp. Auth.*, 274 Ga. App. 44, 45 (616 SE2d 835) (2005).

[11] 197 Ga. App. 754, 755 (399 SE2d 516) (1990).

[12] Id. at 755.

consented, this was a battery.[13] This Court held that "[a] cause of action for battery exists when objected-to treatment is performed without the consent of, or after withdrawal of consent by, the patient."[14] Further, a battery may occur where a medical professional performs a procedure that exceeds the scope of consent.[15] "A medical 'touching' without consent is like any other touching without consent: it constitutes the intentional tort of battery for which an action will lie."[16]

Because the decision to waive sovereign immunity is voluntary on the part of the state, the state may prescribe the terms and conditions under which it consents to be sued, and the manner in which the suit will be conducted.[17] "The doctrine of sovereign immunity requires that the conditions and limitations of the statute that waives immunity be strictly followed."[18]

---

[13] Id.

[14] (Citation omitted.) Id. at 756 (1).

[15] See *Johnson v. Srivastava*, 199 Ga. App. 696, 698 (2) (405 SE2d 725) (1991) (denial of summary judgment to physician affirmed on plaintiff's battery claim where physician removed skin lesion when patient had consented only to excision biopsy).

[16] (Citation and punctuation omitted.) *King*, supra at 45.

[17] *State Bd. of Ed. v. Drury*, 263 Ga. 429, 430 (1) (437 SE2d 290) (1993).

[18] (Citation and punctuation omitted.) *Dept. of Human Resources v. Hutchinson*, supra at 71 (1).

When a statute is plain and susceptible of but one natural and reasonable construction, a court must simply follow the literal language of the statute, unless doing so would lead to absurd or wholly impracticable consequences. A statute is ambiguous when it is susceptible of more than one natural and reasonable interpretation.[19]

Here, the language of OCGA § 50-21-24 (7) is plain and unequivocal. The trial court was authorized, as to the portion of Lockhart's claim relating to the unauthorized grinding down of her lower teeth, to grant the Board of Regents' motion to dismiss.

(b) However, Lockhart's claim that Dr. Nelson's failure timely to schedule an appointment, and to remove and replace the caps, requires a different analysis. This is because our Supreme Court has recognized in *Schramm v. Lyon*[20] that "multiple breaches of the standard of care may constitute new and separate instances of professional negligence and more than one negligent act may contribute to a plaintiff's injury."[21] Specifically, as in the instant case, new acts of negligence may

---

[19] (Citations and punctuation omitted.) *Fulton County Bd. of Tax Assessors v. Greenfield Inv. Group, LLC*, 313 Ga. App. 195, 198 (721 SE2d 128) (2011).

[20] 285 Ga. 72 (673 SE2d 241) (2009).

[21] (Citation omitted.) Id. at 74 (1).

occur where a plaintiff's complaint alleges separate injuries accruing in separate encounters where the physician failed to warn, treat, or advise the plaintiff when she presented for the treatment of new medical conditions not related to the condition for which she first sought treatment.[22]

Lockhart's claims are analogous to *Schramm*, where the Supreme Court recognized that a complaint may allege more than one act of professional negligence resulting in a new injury, where physicians failed timely to warn a patient about preventative measures and failed to prescribe appropriate medications and vaccinations which would have prevented infection.[23]

In the case sub judice, the first injury occurred in the context of a battery, when Dr. Nelson ground down Lockhart's teeth without her consent. Lockhart deposed that she saw "stubs, white, beautiful stubs, but stubs." She then consented to Dr. Nelson's installing temporary crowns over those stubs, deposing that she "rationalized that these teeth–being that they were already drilled down to nubs, I knew they were going to have crowns on them and I knew I could either stay there and have crowns on them that was already paid for . . . or I could flip out and go somewhere else and pay." The

_____

[22] Id. at 73 (1).

[23] Id. at 74 (1).

10

second injury occurred in the context of negligence, when Dr. Nelson failed to contact Lockhart and failed to timely remove the temporary crowns. After installing the temporary crowns, Dr. Nelson told Lockhart that someone would contact her to set up an appointment to have permanent crowns installed. Over the course of four months, however, no one contacted her. During that four-month period, Lockhart was asymptomatic, learning of the deterioration resulting from Dr. Nelson's failure to timely remove and replace the temporary crowns only after she contacted the Dental School for an appointment, at which Dr. Nelson removed the crowns, revealing that her teeth were "bloody, stubby, soft-looking things."

"Based on these allegations, [Lockhart's] complaint cannot properly be characterized as asserting a single, persistent negligent act as argued by appellants."[24] The injury resulting from the failure to contact Lockhart for a new appointment and

[24] Id. Misdiagnosis cases dealing with when statutes of limitation begin to run in the context of separate acts of negligence are informative here: See generally *Amu v. Barnes*, 283 Ga. 549, 553 (662 SE2d 113) (2008) (fact question found as to existence of separate acts of negligence following misdiagnosis, where plaintiff was asymptomatic for a time as to initial medical complaints before new injury manifested); *Sidlow v. Lewis*, 271 Ga. App. 112, 114 (608 SE2d 703) (2004) (fact question for jury existed as to whether separate acts of negligence occurred where patient, who was asymptomatic at time of correct diagnosis, later received improper treatment resulting in injury); *Oliver v. Sutton*, 246 Ga. App. 436, 438 (540 SE2d 645) (2000) (physician's alleged failure to inform patient of diagnosis stands as separate claim from underlying negligence).

the failure to timely remove and replace the temporary crowns is not a battery. It is negligence. The state has waived sovereign immunity for the torts of state employees acting in the scope of their employment pursuant to OCGA § 50-21-23 (a). It is undisputed that Dr. Nelson was a state employee acting within the scope of his employment. Accordingly, Lockhart has met her burden of establishing a waiver of sovereign immunity,[25] and the trial court was not authorized to conclude that it lacked subject matter jurisdiction over the portion of Lockhart's claim asserting negligence from Dr. Nelson's failure to contact her for an appointment and failure to timely remove her temporary crowns and replace them with permanent crowns. We reverse as to this claim.

2. Lockhart contends that the trial court erred in granting summary judgment to MCGHI, which denied liability for Lockhart's claims.

The trial court found that although MCGHI began operating the Medical College of Georgia Hospital and Clinics on July 1, 2000, pursuant to a lease agreement with the Board of Regents, when Lockhart was treated in 2004, MCGHI did not own, operate or manage the School of Dentistry, which was and is a part of

---

[25] *Bd. of Regents of the Univ. System of Ga. v. Oglesby*, 264 Ga. App. 602, 605 (1) (591 SE2d 417) (2003).

12

the Board of Regents. Lockhart does not contest these findings on appeal. Rather, Lockhart argues that the lease and transfer agreements between MCGHI and the Board of Regents provide that MCGHI assumes liability for her injuries. This argument is meritless.

The trial court found, inter alia, that Lockhart could not defeat MCGHI's summary judgment motion by relying on *MCG Health, Inc. v. Nelson*, (*Nelson I*),[26] because of a later iteration of that case, *Nelson v. Board of Regents of the University System of Georgia*, (*Nelson II*).[27] Both cases involve the question of whether MCGHI is liable for injuries committed after it shifted the operations of the hospital to the Board of Regents. *Nelson I* quotes lease and transfer agreements in which MCGHI agrees to "assume, and . . . perform and discharge, all of the liabilities and obligations of [the Board of] Regents and MCG . . . which were incurred or arose in connection with the Leased Facilities or Assets, whether known or unknown, contingent or otherwise."[28] In *Nelson I*, upon which Lockhart relies, this Court affirmed the denial of summary judgment to MCGHI, reasoning that it had not shown as a matter of law

---

[26] 270 Ga. App. 409 (606 SE2d 576) (2004).

[27] 307 Ga. App. 220 (704 SE2d 868) (2010).

[28] *Nelson I* at 410 (1).

that it did not assume liability.[29] In *Nelson II*, however, after MCGHI supplemented the record, we upheld, on procedural grounds,[30] the trial court's grant of summary judgment in MCGHI's favor after new evidence showed that plaintiffs' claims were excluded from the liabilities MCGHI agreed to assume.[31]

> To prevail on a motion for summary judgment, the moving party must demonstrate that there is no genuine issue of material fact, so that the party is entitled to judgment as a matter of law. A defendant may do this by either presenting evidence negating an essential element of the plaintiff's claims or establishing from the record an absence of evidence to support such claims.[32]

To defeat a summary judgment motion, Lockhart "must plead a legally-viable affirmative defense supported by some evidence rather than mere guesswork. Mere speculation, conjecture or possibility are insufficient to preclude summary judgment."[33]

---

[29] Id. at 412 (2).

[30] Supra at 228-229 (2).

[31] Id. at 227 (2).

[32] (Punctuation and footnote omitted.) *Hawkins v. DeKalb Med. Center*, 313 Ga. App. 209, 220 (1) (a) (721 SE2d 131) (2011).

[33] (Citations and punctuation omitted.) *State v. Rozier*, 288 Ga. 767, 768 (707 SE2d 100) (2011).

Although Lockhart cited language from the lease and transfer agreements as quoted in *Nelson I*, those agreements are not in the record before us. Nor has Lockhart provided any evidence or inference that the agreements cover the Dental School. Both *Nelson I* and *Nelson II* only refer to the hospital's liabilities.[34] Further, Lockhart offered no evidence or inference indicating she is a beneficiary of these agreements or that her claim is included in their liability provisions.

Where there is an absence of evidence to support at least one essential element of a plaintiff's case, the defendant is entitled to summary judgment.[35] Although the trial court's rationale in granting MCGHI's motion for summary judgment differs from ours,[36] the trial court did not err.

*Judgment affirmed in part and reversed in part. Adams, J., concurs and Barnes, P.J., concurs specially and in judgment only.*

---

[34] *Nelson I*, supra at 410; *Nelson II*, supra at 220.

[35] *Lau's Corp. v. Haskins*, 261 Ga. 491, 495 (4) (405 SE2d 474) (1991).

[36] *City of Gainesville v. Dodd*, 275 Ga. 834, 835 (573 SE2d 369) (2002) ("Under the 'right for any reason' rule, an appellate court will affirm a judgment if it is correct for any reason, even if that reason is different than the reason upon which the trial court relied") (citation omitted).

15

A12A0513. LOCKHART v. THE BOARD OF REGENTS OF THE

UNIVERSITY SYSTEM OF GEORGIA, et al.


BARNES, Presiding Judge, concurring specially.

I concur in the majority opinion, but in judgment only. The majority opinion thus decides only the issues in this case and may not be cited as binding precedent. Court of Appeals Rule 33 (a). I write separately to voice my concern over application of the assault and battery exception to the conduct of medical professionals under the circumstances presented in this case.

While it may be good public policy to except intentional torts from the State's waiver of sovereign immunity provided by the Georgia Tort Claims Act, I believe that

extending that exception to medical or surgical errors that constitute no more than a technical battery is neither wise nor just. Surely the legislature, in enacting the assault and battery exception to the Act, did not foresee that the exception would encompass what essentially are botched medical procedures rather than intentional wrongful acts.

Nevertheless, our job is to construe statutes as written, and we have repeatedly held that the unqualified use of the terms "assault" and "battery" in OCGA § 50-21-24 (7) encompasses all acts that would constitute those common law torts. See *Davis v. Standifer*, 275 Ga. App. 769, 774-775 (1), n. 5 (621 SE2d 852) (2005); *Dept. of Human Resources v. Coley*, 247 Ga. App. 392, 398 (3) (544 SE2d 165) (2000), disapproved in part on other grounds by *Ga. Dept. of Transp. v. Heller*, 285 Ga. 262, 265-266 (1) (674 SE2d 914) (2009). And, as the majority indicates, it is well-settled that "a physician who undertakes to treat another without express or implied consent of the patient is guilty of at least a technical battery." *Mims v. Boland*, 110 Ga. App. 477, 481 (1) (a) (138 SE2d 902) (1964). See *Bailey v. Belinfante*, 135 Ga. App. 574, 575-576 (2) (218 SE2d 289) (1975) (evidence of unauthorized extraction of additional teeth by oral surgeon would support finding that a technical battery occurred). Consequently, I agree with the ultimate result reached by the majority that

2

we must affirm the trial court's dismissal of Lockhart's claim relating to the unauthorized grinding down of her lower teeth.

That being said, I believe that the General Assembly should amend the Georgia Tort Claims Act to remove the conduct of medical professionals constituting a mere technical battery from the scope of the assault and battery exception contained in OCGA § 50-21-24 (7). As this Court has pointed out, "[s]overeign immunity is a harsh doctrine, not an equitable one. Indeed, it is just the opposite of equity – it is the [S]tate declaring that it cannot be sued even where it would otherwise be liable." *Coley*, 247 Ga. App. at 398 (3). That harshness is only exacerbated by the unqualified use of the terms "assault" and "battery" in OCGA § 50-21-24 (7), which has the effect of extending the statutory exception beyond situations of intentional wrongful conduct to those more in the nature of professional medical malpractice. Because "[o]ur job is to read the statute, not to rewrite it to conform to an equitable result," *Coley*, 247 Ga. App. at 398-399 (3), the remedy in this situation lies with the legislature, and I urge it to act.